Belknap
No. 6812

TOWN OF ALTON

v.

ALBERT V. FISHER III & a.

LOCKE DEVELOPMENT CORPORATION & a.

v.

ALBERT V. FISHER III & a.

May 31, 1974

*Orr & Reno, Richard B. Couser* and *Neil F. Castaldo* (*Mr. Couser* orally) for Locke Development Corporation.

*Fisher, Parsons, Moran & Temple* and *Robert E. Fisher* (*Mr. Fisher* orally) for Albert V. Fisher III, town moderator.

*McLane, Graf, Greene & Brown* for the town of Alton, filed no brief.

*Nighswander, Lord, Martin & KillKelley* for Eleanor D. Horne, town clerk, filed no brief.

GRIMES, J. The central issue on appeal is whether proposed amendments to the Alton zoning ordinance to increase the minimum lot size and lot frontage required a two-thirds majority vote pursuant to RSA 31:64. Two separate actions questioned the validity of the amendments which passed by a simple majority and which were proclaimed validly enacted by the moderator of the town meeting. On May 7, 1973, the town, naming the moderator and Locke Development Corporation (Locke) respondents, brought a petition for a declaratory judgment to determine the validity of the amendments. On May 15, 1973, Locke petitioned the court for a writ of mandamus ordering the moderator and the town clerk to declare that the proposed amendments had not been enacted since they did not receive a two-thirds majority vote. Because the two actions raised identical issues and arose from the same facts, they were consolidated and tried together. A hearing was held before a Judicial Referee, *Amos N. Blandin, Jr.*, who made certain findings and rulings and recommended six questions be transferred without ruling. The Court, *Keller, C.J.*, adopted the referee's report and transferred all questions.

The two amendments which were voted on at the annual town meeting provided for increasing the minimum lot size and lot frontage in the rural zone to two acres and 200 feet, respectively, and in the residential zone to one acre and 150 feet. Unless controlled by RSA 31:64, a simple majority of the votes cast at the meeting would enact the amendments. RSA 31:64 provides in part that if petitions protesting proposed changes are signed by the owners of at least twenty percent of the area included in the change a two-thirds vote is required to amend the zoning ordinance. Petitions were filed with the town selectmen on February 27, 1973.

Voting at the town meeting held on March 6, 1973, began at 9:00 a.m. At 9:35 a.m., the moderator received two letters from the selectmen certifying that petitions filed with them brought the proposed changes within the two-thirds requirement of RSA 31:64. At this point, about 30 persons had voted. After all the voting, the proposed changes passed by a simple majority but, by a two-thirds requirement, both failed. At the close of the meeting, the moderator deferred ruling on the requirement for a two-thirds vote. Two weeks later on March 21, the moderator announced in a written statement that the petitions did not comply with the statute and that the zoning ordinance was thereby effectively amended with a simple majority vote.

Two preliminary questions transferred are whether or not a declaratory judgment is a proper remedy and whether the Locke petition for a writ of mandamus requires, as a matter of law, dismissal of the town's petition for declaratory judgment. Declaratory judgments have been used previously to challenge the validity of zoning amendments, protest petitions and moderators' declarations. *Drown v. Hudson,* 112 N.H. 386, 296 A.2d 897 (1972). The statute permitting declaratory actions has a broad remedial purpose, *Faulkner v. Keene,* 85 N.H. 147, 155 A. 195 (1931), which in this case is served by resolving the town's doubts about the validity of the zoning amendments. *Hermer v. Dover,* 105 N.H. 108, 192 A.2d 624 (1963); *Jones v. Merrimack Valley School Dist.,* 107 N.H. 144, 218 A.2d 55 (1966). A writ of mandamus, however, is an extraordinary rem-

edy and, where other adequate relief is available, it is not appropriate. *Bois v. Manchester,* 104 N.H. 5, 177 A.2d 612 (1962).

Three of the issues transferred challenge the validity of the protest petitions under RSA 31:64 as construed by *Towle v. Nashua,* 106 N.H. 394, 212 A.2d 204 (1965). The *Towle* case held that protest petitions should be filed with the legislative body considering the proposal at any time before "action" is taken on the proposal by that body. *Id.* at 400, 212 A.2d at 208. The respondent-moderator's argument is that, under the *Towle* case, the petitions must be filed with the legislative body acting on the proposals and, in this case, the legislative body is either the town as a whole or the moderator who runs the meeting of the town. Secondly, respondent argues, that because the legislative body had commenced "action" on the proposals by opening the polls before the moderator received notice of the petitions, the petitions were not timely filed.

Accordingly, the questions transferred are whether RSA 31:64 requires that protest petitions be presented to the town clerk or moderator; whether the petitions here were seasonably filed and presented to the town selectmen; whether the voting of thirty people prior to selectmen notifying the moderator of the petitions constituted "action" by a legislative body within the meaning of the *Towle* case such that the petitions were ineffective.

RSA 31:64 makes no provision for prior certification that petitions comply with the statute, for time or place of filing, or even for filing at all. The statute simply says that where there exists a valid protest, amendments shall not become effective except by the favorable vote of two-thirds of the voters. RSA 31:64. Therefore, the argument that the statute requires that petitions must be filed with a particular town official at a particular time cannot be accepted. The *Towle* case dealt with a city form of government where a small legislative body of fifteen aldermen were in a position both to judge the validity of the petitions and to quickly decide the proposal the petitions protested. In that case, filing with the aldermen before "action" was taken was proper. It does not follow that in this case the only proper procedure is

to present the petitions to the town meeting or to the moderator.

On the contrary, selectmen are logical and proper officials with whom to file petitions. Selectmen are charged generally with managing the prudential affairs of the town. RSA 41:8. They are responsible for drafting and publishing the warrant for the town meeting and are thereby closely involved with issues coming before the meeting. RSA 39:12. And since they have ready access to and familiarity with the tax and property ownership records of the town, RSA 41:15, they are in a unique position to determine if the acreage requirements under the statute are met. Decided cases indicate petitions in other towns have been delivered to selectmen. *Cutter v. Durham,* 109 N.H. 33, 35, 241 A.2d 216, 218 (1968); *Drown v. Hudson,* 112 N.H. 386, 387, 296 A.2d 897, 898 (1972). Guided by the reasonable expectations of the property owners whom RSA 31:64 was designed to protect, the court will not read into the statute technical procedural requirements when less formal methods effectively carry out the purpose of the statute and do not prejudice the rights of others.

Since we hold the petitions could be properly filed with the selectmen, it follows that the petitions, delivered a week before the meeting, were seasonably filed. The delay of the selectmen in notifying the moderator should not be allowed to compromise the rights of the protesters.

The final question transferred without ruling is whether the moderator had authority to rule the protest petitions invalid. Though initially determined by town officials, the issue of whether protest petitions invoke a two-thirds majority requirement ultimately raises questions of fact and law to be decided by a trial court. *Plainfield v. Hood,* 108 N.H. 502, 240 A.2d 60 (1968). The referee found that in form and substance the protest petitions complied with the requirements of RSA 31:64. Accordingly, the determination of the moderator that the petitions were invalid is entitled to no weight. *Pierce v. Langdon,* 110 N.H. 170, 171, 262 A.2d 609, 610 (1970); *Drown v. Hudson,* 112 N.H. 386, 296 A.2d 897 (1972).

The respondent further argues that the referee erred in

his finding that the petitions contained signatures representing ownership of twenty percent of the land affected by the changes. The basis for this argument is the assertion that property owned by trusts, partnerships or cotenants can be represented only by signatures of all parties having an interest in the property. The referee's finding was supported by the evidence. Cotenants who did not sign testified that they either authorized the signing in advance or ratified it afterwards. A substantial tract held in trust was properly included since the managing trustee of the investment group, before signing the petition, convened a meeting of the trustees who specifically authorized his signature on their behalf. A general partner, acting within the scope of the partnership business, can bind the other partners. *Caswell v. Maplewood Garage,* 84 N.H. 241, 149 A. 746 (1930). The combination of land held in trust in cotenancy and by the partnership together with that for which the signatures are not contested meets the twenty percent requirement.

The final issue raised by respondent is an alleged conflict of interest by one of the selectmen who certified the petitions and who was an employee of the Lockewood Construction Company which was owned by the respondent-Locke Development Corporation. The referee found "as a fact . . . the twenty percent requirement was plainly met and . . . [the] error, if any, in [the selectmen] not disqualifying [themselves] was harmless." *Atherton v. Concord,* 109 N.H. 164, 245 A.2d 387 (1968). The question is whether the protest petition in fact met the requirements of the statute and this is determined without regard to the determination made by the selectmen.

*Declaratory judgment for Locke Development Corporation.*

All concurred.