Carroll
No. 87-250

CHARLES I. WHITE

v.

TOWN OF WOLFEBORO

September 23, 1988

*Walker & Varney*, of Wolfeboro, and *Elizabeth Cazden*, of Manchester (*George W. Walker* and *Ms. Cazden* on the brief, and *Mr. Walker* orally), for the plaintiff.

*Barto and Puffer P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for the defendant.

BATCHELDER, J. This is a case about land and some of the consequences of a failure to pay real estate taxes on a timely basis. The land is in Wolfeboro, and on April 1, 1982, the date of the tax assessment upon it, title stood in the name of Charles I. White, the plaintiff. He had owned the land since 1953 and had paid taxes through the 1981 assessment period. The land, unique as to all other land, consisted of approximately ninety-five undeveloped acres adjacent to Northline Road, and was assessed at $21,360, resulting in a tax of $358.85. The record indicates that the assessed value in question was approximately 20% of its market value in a time of generally escalating land values in the area.

The taxes for the tax year in question (April 1, 1982, through March 31, 1983) were not paid, and on June 28, 1983, a notice of tax sale was sent to the plaintiff pursuant to RSA 80:21. The plaintiff had resided at Bay View Road in Dover until, during the 1982 tax year and after his marriage was dissolved by a decree of divorce, he moved to Route 108 in Durham. He resided there throughout the relevant period, including 1985. The June 28, 1983 notice of tax sale was mailed by certified mail to the plaintiff at his Dover address and was returned to the town offices in Wolfeboro marked by the post office as follows: "Returned to Sender, Moved, not forwardable." The Trial Court (Manias, J.) found that "[t]he sale was conducted at the Selectmen's Office in Wolfeboro on July 26, 1983. The property was purchased at the sale by the Town for the amount of taxes, interest and costs then due." Such an event is significant for the owner since, assuming the validity of the tax sale, its effect is the changing of a continuing inchoate lien for municipal taxes to an asserted lien of record for a specified amount upon which a higher level of statutory interest begins to run. In addition, the statutory clock starts to run against the time when the owner may lose the title to the land itself to the municipality or to another entity or person who "buys the taxes" at the collector's sale.

On July 1, 1985, pursuant to RSA 80:38-a (Supp. 1987), the town sent a certified mail notice to the plaintiff, once again at the Bay View Road, Dover, address, notifying him that the property in question would be deeded to the payer of the taxes at the 1982 tax sale unless he redeemed the property within 30 days of the notice. The envelope containing the notice was returned to the town offices in Wolfeboro having been marked by the post office as follows: "Returned to sender, forwarding order expired." The plaintiff failed to redeem the property, and the tax collector executed a deed

dated October 8, 1985, to the Town of Wolfeboro, purporting to convey a full interest in the entire 95-acre tract.

During the period in question the offices of town manager and tax collector in Wolfeboro were held by one Krapp, whose affidavit accompanying the defendant's motion for summary judgment indicates that he conducted the tax sale in question at the selectmen's office and that the only other persons in attendance were the deputy tax collector and town clerk (the same person) and the selectmen. He further asserted in his affidavit that the town, acting through its selectmen, was the only bidder and that it "did not offer to take less than the entire property, or less than a one-hundred percent (100%) interest" for the amount then due—$387.39.

In September 1986, the plaintiff filed a petition to set aside the deed, to quiet title, and for damages pursuant to 42 U.S.C. § 1983. Motions for summary judgment were filed by both parties, and a hearing before the trial court resulted in rulings that the town had followed the applicable statutory procedures of RSA chapter 80, that the procedure employed by the town did not violate notions of due process as provided for in the New Hampshire or Federal Constitutions, and that there were no § 1983 violations. Because we hold that the town did not conduct the tax sale in accordance with RSA 80:24, we reverse and remand. In keeping with our long-standing policy to decide cases on constitutional grounds only when necessary, *see New Hampshire Ins. Co. v. Duvall*, 115 N.H. 215, 218, 337 A.2d 533, 535 (1975), we do not reach the claims asserting a deprivation of constitutional due process rights under the State and Federal Constitutions. Similarly, we need not address the 42 U.S.C. § 1983 claim, or the plaintiff's assertions dealing with lack of statutory notice of the sale or the pendency of the collector's deed.

RSA 80:24 provides, with respect to the collector's sale, that:

> "Every such sale shall be at auction, in some public place in the town or place where the land is situated, and between the hours of ten in the forenoon and six in the afternoon, and *shall be of so much of the estate holden as will pay the taxes and incidental charges*; but, if necessary, the sale may be adjourned from day to day, not exceeding three days, by proclamation made at the place of sale within the hours aforesaid."

(Emphasis added.) Apropos to our consideration of this case is RSA 80:24-a, which is instructive in providing that "[w]hen such sale is of less than the whole estate the collector *shall sell only a common and undivided interest in the property* and no portion thereof shall

be sold in severalty by metes and bounds." (Emphasis added.) This subsection became law in 1961 and was, accordingly, in effect during the time of the events giving rise to the case before us.

We find that RSA 80:24 and :24-a control the outcome of this case. It is apparent from the pleadings and supporting affidavits in the case, as well as the findings of fact by the trial court, that the town did not comply with the statutory mandate in conducting the tax sale of the plaintiff's property. Judicial scrutiny has, for all practical purposes, been only twice visited upon the language of the statute. *Coleman v. Hooksett,* 111 N.H. 337, 283 A.2d 681 (1971); *Spurgias v. Morrissette,* 109 N.H. 275, 249 A.2d 685 (1969). In *Spurgias,* the claimant sought to recover the so-called surplusage or overage received when the town sold its tax title for $2,865.54 more than was due the town for the unpaid tax liability. 109 N.H. at 276, 249 A.2d at 686. The claimant suggested, in the language of the decision, that it was "open to him to attack the tax sale under RSA 80:24 . . . upon the assumption that it was unnecessary to sell the entire property in order to satisfy the charge[s] [against it]." *Id.* at 278, 249 A.2d at 687. The court, it would seem by way of dictum, found no statutory violation because the record failed to show that any bidder offered to take less than the whole for the amount due. *Id.* at 278, 249 A.2d at 687–88. The use of the word "shall" in the statute indicates that the burden is on the municipality to see that the sale "shall be of so much of the estate holden as will pay the taxes. . . ." RSA 80:24. The *Spurgias* dictum, with which we now disagree, would tend to suggest that the burden is somehow on the taxpayer to show that there was an opportunity, which the town neglected, to sell less than the whole property at the tax sale he is seeking to set aside.

In the *Coleman* case, the property sought to be redeemed consisted of six parcels of land assessed variously from $30 to $170, and one parcel, assessed at $1770, upon which there was a building that the government had determined to be a fire hazard and not fit for occupancy. *Coleman v. Hooksett, supra* at 338, 283 A.2d at 682. The poor condition of the property would adversely affect its market value, and the court considered this consequence in holding that the "trial court could properly find on the evidence that a bidder at the sale would not be satisfied with less than all the property and could rule that RSA 80:24 was not violated." *Coleman, supra* at 339, 283 A.2d at 682.

Both *Spurgias* and *Coleman* were decided on narrow factual bases, and cannot be said to be controlling here. In this case, an entire property having an assessed value in excess of $21,000 by

the town's own account and a market value in excess of $100,000 was sold for $387.39 at a sale held in the town office where the only persons present were town officials apparently acting in their governmental capacities. The plaintiff in this case mounts a frontal assault upon the methodology of tax sales, and we believe the statute requires more than was done in the case at hand. The principal question then becomes, how much more is required? The statute is plain enough in requiring that the sale "shall be of so much of the estate holden as will pay the taxes. . . ." RSA 80:24; *see Ainsworth v. Dean*, 21 N.H. 400, 407 (1850). Because the following section 24-a, which requires the sale of "only a common and undivided interest in the property," is explicit in negating the sale of actual physical portions of the property by metes and bounds, we know that the legislature intended that municipalities not be placed in the awkward and understandably expensive position of setting off parcels of land which represent a monetarily fractional part of the whole. The practical application of such an enterprise would boggle the minds of local officials, taxpayers, mortgagees, bankers, lawyers, investors, and others. In enacting § 24-a, the legislature prevented this mathematical nightmare; however, at the same time, it left the main language of § 24 intact and, in so doing, impliedly called attention to its significance. *See* N.H.S. JOUR. 179 (1961).

At the outset, we noted that the tax sale turns an inchoate lien into an asserted lien of record for an amount certain. A collector's deed, however, is an actual transfer of title to which all other interests, including those of mortgagees, are subordinate. This is strong medicine, and, because of it, the legislature, in its wisdom and experience, has required that only so much of an interest be sold as will pay the taxes, interest, and charges. The application of the language to tax sales is not difficult in the light of § 24-a.

■■ Accordingly, we hold that when a tax sale is conducted by the collector, only that portion of the estate may be sold, as an undivided interest in common with the person to whom the property is taxed, as the amount of the tax, interest and charges bears to the value of the property in the tax year in question, computed by dividing the assessed valuation by the equalization ratio for the municipality used to equalize valuations under RSA 21-J:3, XIII (Supp. 1987). We realize that there may be rare and occasional situations (as perhaps in *Coleman*) where such a "by the numbers" application of the statute may work a hardship on a municipality and its officers which may require an alternative methodology; but in such cases the taxing authority will bear the

6

burden to show that particular exigencies take the case out of the ordinary, thereby relieving the taxpayer of the burden to show otherwise.

One practical question remains. It concerns the unlikely event of a taxpayer who, by nonpayment of taxes, forces the municipality to become his reluctant or unwilling fractional partner in ownership. Suffice it to say that in such cases the municipality will have the same rights as any other cotenant in that it may follow the statutory procedure for partition and bring about a sale of the premises at auction in a more realistic market than exists at present in town offices where only town officials and perhaps a few others attend tax sales. This literal application of the statute will also serve to blunt executive or administrative zeal designed to prevent the taxpayer from returning the premises to private ownership where it would be subject to the forces of the marketplace. *See* W. Howes, TAX COLLECTING IN NEW HAMPSHIRE 186–87 (1941).

We emphasize in closing that our decision here is based on our interpretation of existing legislation and prior case law. Any further comment in this area is a matter of legislative prerogative. We reverse and remand to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*

All concurred.