Merrimack
No. 89-011

BLUE JAY REALTY TRUST

v.

CITY OF FRANKLIN

December 13, 1989

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*Michael R. Callahan* on the brief, and *Steven J. McAuliffe* orally), for the plaintiff.

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* on the brief and orally), for the defendant.

SOUTER, J. The plaintiff has petitioned for declaratory judgment and injunctive relief, challenging the validity of 1987 amendments to the defendant's zoning ordinance, and has sought compensation under the State and National Constitutions for either a temporary or permanent taking said to have resulted therefrom. The Superior Court (*Mayland H. Morse, Jr.*, Esq., Master; *M. Flynn*, J.) cited the plaintiff's failure to comply with RSA 677:2, :3 and :4 and failure to exhaust administrative remedies in granting the defendant's motion to dismiss. Although we affirm the dismissal of the federal taking claims, without prejudice, we otherwise reverse.

The following allegations contained in the petition are taken as true for purposes of the motion to dismiss. *See Collectramatic v. Kentucky Fried Chicken Corp.*, 127 N.H. 318, 320, 499 A.2d 999, 1000 (1985). In October 1986, principals of the plaintiff, Blue Jay Realty Trust, began negotiating for the purchase of a 150-acre tract located in the city of Franklin, and informed certain officials of the defendant city of Blue Jay's interest in using the land for residential building. Under the zoning ordinance then in effect, a maximum of 360 residential units could have been placed on the tract. In December 1986, Blue Jay executed a contract to buy the property, and in January 1987, Blue Jay's representatives met with city officials, who confirmed that the land was zoned as Blue Jay understood and was not the subject of any contemplated amendments to the zoning ordinance. In March 1987, Blue Jay took conveyance of 85 of the 150 acres, the balance of which remains subject to the 1986 contract.

Blue Jay then sought approval from the city planning board to subdivide the 85 acres. Soon thereafter, at an informational hearing held in the course of the board's meeting in June, 1987, someone speaking for the board indicated that the land would probably be rezoned to reduce the permitted density of development. Blue Jay was subsequently advised that its application was incomplete and therefore ineligible for consideration at July's planning board meeting. Although the city manager represented that some indication of the areas thought to be incomplete would be forthcoming, none was ever given.

In the meantime the city council received a proposal to amend the ordinance to increase minimum lot sizes from one-half to two-and-one-half acres in an area in which Blue Jay's land was the largest tract, and the planning board amended its subdivision regulations to conform to the zoning changes so proposed. By the end of July, relations between the parties had deteriorated so far

that the city manager directed that Blue Jay's subdivision application be denied and charged Blue Jay with dishonesty and deception in trying to circumvent the planning board's procedures. The parties nevertheless attempted to negotiate a resolution of their dispute, though to no avail, and in September the city council adopted a zoning amendment covering an area that included Blue Jay's parcel. The revision increased the minimum lot size to an acre-and-a-half, eliminated cluster development except by special exception, and made other changes that need not be canvassed here. The result was to reduce the buildable capacity of Blue Jay's land from 360 units to approximately 63.

In February 1988, Blue Jay filed a petition seeking declaratory judgment, injunctive relief and assessment of damages, combining legal, equitable, State, and federal claims. Although its petition listed four counts, one count referred only to the form of relief requested rather than the theory of entitlement to the relief sought, and within other counts more than one theory of relief seems to have been pleaded. Among those theories, we discern challenges to the validity of the amendments as inconsistent with the city's master plan; as lacking support in objective criteria; as *ultra vires*; as intended to halt development; as directed against Blue Jay; as frustrating reasonable, investment-backed expectations; and as denying federal due process and State and federal equal protection. Blue Jay sought a declaration of the amendment's invalidity and an injunction enjoining its enforcement. The petition claimed further that a temporary or permanent taking of, or interference with, property rights had resulted.

The city responded with a motion to dismiss "on the ground that the plaintiff has failed to comply with the provisions of RSA 677:2, :3, :4, regarding appeals from zoning decisions, and is therefore barred from doing so by way of this untimely Petition." RSA 677:2 (Supp. 1988) allows "the selectmen, any party to the action or proceedings, or any person directly affected thereby [20 days to] apply for a rehearing" with respect to "any order or decision of the zoning board of adjustment, or any decision of the local legislative body or a board of appeals in regard to its zoning." *See* RSA 672:8, I (where appropriate, "local legislative body" refers to city council). So far as it concerns this case, RSA 677:3, I (Supp. 1988) provides generally that the grounds for relief specified in a rehearing petition limit the issues that may be raised on further appeal. RSA 677:4 provides that any person aggrieved by an order or decision of the zoning board of adjustment (ZBA) or local legislative body

may appeal to the superior court within thirty days of the official recording of the action complained of.

Blue Jay objected to the city's motion to dismiss, with the argument that the "Doctrine of Exhaustion of Remedies and the citation of RSA 677:2, :3 and :4 have no applicability to the cause of action as set forth in [its] Petition." The matter was assigned to a master for hearing.

The master recommended the motion be granted for what we understand to be two independent reasons. He reasoned that RSA 677:2 *et seq.* limit the opportunity to mount a direct attack on the validity of a zoning provision, by imposing time limitations and mandatory administrative prerequisites, neither of which Blue Jay claims to have complied with. The master also cited Blue Jay's failure to seek a variance or exception from the requirements of the ordinance, either of which might afford Blue Jay sufficient relief to end the controversy. The trial court adopted the master's recommendations, leading to this appeal.

A threshold question, which we raise on our own motion, is the extent to which we should engage in a more detailed examination of Blue Jay's various claims for relief in deciding whether and to what extent the trial court ruled erroneously. In moving to dismiss generally, the city assumed no such breakdown of specific claims was necessary. To a large degree the master accepted this view, and we will do the same, to the extent of treating the claims as falling into two generic categories: that the amendment is invalid, and (as a complement or alternative) that compensation is required with respect to some period of time on a theory, either of compensable taking of property interests, or of federal due process independent of the fifth amendment requirement of just compensation.

■ The taking and due process compensation claims lend themselves to expeditious treatment, and we consider them first. Although the master's report did not expressly rely on *Williamson Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985), we read this case as authority for dismissing the federal claims, the one based on the fifth amendment's just compensation guarantee, enforceable against the States under the fourteenth amendment, *see Chicago, Burlington &c. R'd v. Chicago*, 166 U.S. 226, 241 (1897), and the other resting simply on the due process clause of the fourteenth amendment, *see Williamson, supra* at 197. *Williamson* held that in an action predicated on a zoning restriction and brought under 42 U.S.C. § 1983, neither a just compensation nor a due process claim is ripe for adjudication until the plaintiff

property owner has sought and been denied a variance to use the land in the manner desired, *Williamson, supra* at 191, 199. The Court held further that no claim for just compensation is stated under the fifth amendment without alleging that the landowner sought and was denied compensation as a remedy under State law, *id.* at 195. Since we assume that Blue Jay intended to rely on 42 U.S.C. § 1983 as the jurisdictional basis for its federal compensation claims, and since it has fulfilled neither of *Williamson's* conditions, dismissal was appropriate, though without prejudice, of course.

■ We assume that the master relied on the first of *Williamson's* reasons in dismissing the State taking claim as well, since RSA 677:2 (Supp. 1988) and :4 have no ostensible application to that claim, dealing as they do with challenges, *inter alia*, to zoning enactments as distinguished from claims for compensation resulting from the applicability of such enactments. The city, in any event, would have us apply a *Williamson* requirement to exhaust administrative remedies before entertaining a claim for compensated taking, and urges us to affirm the dismissal of the State taking claim on this ground. We, however, believe it would be premature to rule on this issue here. Our prior cases recognizing that zoning regulation can effect a compensable taking under part I, article 12, starting with *Burrows v. City of Keene*, 121 N.H. 590, 432 A.2d 15 (1981), impose no such requirement, and while we do not mean here to foreclose the city from arguing that such an exhaustion rule should be imposed on a *Burrows* plaintiff, we will need a more developed record than this case now presents, as well as reason to believe that the issue need be reached, before considering it. Therefore, insofar as the order of dismissal relates to a *Burrows* taking claim under the State Constitution, we reverse without prejudice to the city's right to raise the issue when the pleadings are clearer and any other potentially dispositive motions have been considered.

The trial court's treatment of the claims for injunctive and declaratory relief predicated on invalidity of the enactments remain to be considered. The master's report reflects no distinction for purposes of the dismissal motion between the requests for these two forms of relief, a treatment we think is appropriate, since the request for injunction is merely ancillary to the request to rule the amendment invalid. For simplicity in reviewing the remaining effects of the dismissal order, therefore, we will treat the petition simply as one for a declaratory judgment of invalidity.

We read the master's recommendation to dismiss the invalidity claim as resting not on a *Williamson* finality requirement, but entirely on RSA 677:2 (Supp. 1988) and :4, the implications of which deserve some preliminary comment. The trial court accepted the city's argument that the petition for declaratory judgment under RSA 491:22 is barred by Blue Jay's failure to challenge validity by motion for rehearing in the first instance under RSA 677:2 (Supp. 1988), followed by an appeal within the thirty days allowed by RSA 677:4. In accepting that position, the trial court did not, however, rule that the validity of a zoning amendment may be litigated judicially only by appeal to the superior court within the thirty-day period after a local legislative body's denial of a motion for rehearing. Although the requirements of a § 2 motion within twenty days and a § 4 appeal within thirty days impose procedural limitations on such direct challenges to the validity of a zoning enactment, *see, e.g., V. M. Stevens, Inc. v. South Hampton,* 114 N.H. 118, 316 A.2d 179 (1974) (brought under previous codification of RSA 677:4 as RSA 31:77); *Schadlick v. Concord,* 108 N.H. 319, 234 A.2d 523 (1967) (same), our case law is replete with collateral challenges raised long after the enactment of an ordinance, in the course of proceedings litigating its application to particular property, *see, e.g., Town of Hampton v. Brust,* 122 N.H. 463, 446 A.2d 458 (1982) (town's petition to enjoin violation); *Cloutier v. Epping Water and Sewer Comm'n,* 116 N.H. 276, 360 A.2d 892 (1976) (owner's mandamus petition for order to allow sewer connection); *Sundeen v. Rogers,* 83 N.H. 253, 141 A. 142 (1928) (bill in equity appealing order of board of adjustment). Consistently with these cases, the city simply argues that §§ 2 and 4 limit direct, though not collateral, attacks on the validity of an ordinance, so as to bar Blue Jay's direct challenge by means of petition for declaratory judgment, not predicated on a timely motion for rehearing or brought within the thirty-day period. The city relies generally on *Salmonsen v. Rindge,* 113 N.H. 46, 299 A.2d 926 (1973) (appeal from ZBA), which held that "the tenor of the zoning decisions on procedural limits is generally strict and frequently mandatory," *id.* at 48, 299 A.2d at 927 (citations omitted).

Blue Jay's first response is to argue that §§ 2 and 4 are inapplicable when the validity of a zoning enactment is directly attacked, since those sections should be construed to relate not to a local legislative body's legislative acts, as in the adoption of a zoning ordinance, but only to acts of an administrative or quasi-judicial nature. Certainly it must be admitted that the texts of the two sections provide support for this view. Section 2 speaks of

"orders" or "decisions" of the local legislative body in regard to zoning, from which "rehearing" may be sought by petition specifying "the ground therefor." Section 4 speaks of a person "aggrieved" by an "order" or "decision" of the legislative body, who may petition the superior court by specifying the grounds on which the decision is claimed to be "illegal or unreasonable." This is the vocabulary of adjudication, not legislation, and further references with like indications could be culled out of the statute. Blue Jay tries to clinch the argument by pointing out that a local legislative body can exercise an adjudicatory function to which §§ 2 and 4 could sensibly be related, since RSA 674:14 (Supp. 1988) authorizes such a body to act as a zoning board of adjustment under certain circumstances. Hence, Blue Jay would have us conclude that the only direct challenges to decisions of a city council or a town meeting that are subject to §§ 2 and 4 are challenges to decisions rendered by such a legislative body acting in its capacity as a ZBA.

While it is thus plausible, the argument is nevertheless unsound. Although the original version of § 4 was enacted as a part of the original zoning enabling legislation by Laws 1925, 92:7, the earliest predecessor of RSA 674:14 (Supp. 1988) did not arrive for another ten years, as Laws 1935, 55:32. The adjudicatory language in the original of § 4 could not, therefore, have alluded to a legislative body's action in the capacity of a ZBA. On the contrary, the explanation for using the seemingly inappropriate adjudicatory language to describe a direct challenge to a legislative act is explained by the fact that the first draft of Laws 1925, 92:7, as a Senate bill, provided for appeals only from boards of adjustment, not from local legislative bodies. *See Scott v. Davis*, 94 N.H. 35, 37, 45 A.2d 654, 655 (1946). The further provision for "appeals" challenging the exercise of the legislative function in the enactment of a zoning provision was added by a later, Senate amendment, but without otherwise revising the original terminology of the bill. *See* N.H.S. JOUR. 266 (1925). Thus were provisions seemingly alluding to appeals from quasi-judicial acts made applicable to direct challenges to the adoption of zoning regulations, with the resulting incongruity of speaking of "appeals" from essentially legislative acts. The resulting applicability to such legislative acts of what is now § 4 was clearly settled in *Scott v. Davis supra.*

Blue Jay's next argument is that construing §§ 2 and 4 to bar a direct attack on the validity of an ordinance after the thirty-day period would be constitutionally impermissible insofar as it would impose an unreasonable restriction on the assertion of constitutional claims. Although this argument suffers from the fact

that the city's theory would restrict only direct, and not collateral, challenges, the point is one we decline to pass upon, under authority of the familiar rule that constitutional adjudication is to be avoided where there is an adequate legal ground to decide the issue before the court. *Bedford Residents Group v. Town of Bedford,* 130 N.H. 632, 638, 547 A.2d 225, 229 (1988); *White v. Town of Wolfeboro,* 131 N.H. 1, 3, 551 A.2d 514, 515 (1988) (citing *New Hampshire Ins. Co. v. Duvall,* 115 N.H. 215, 218, 337 A.2d 533, 535 (1975)).

The adequate legal ground in this instance is existing authority for two related propositions: that the rehearing requirement of § 2 is not absolute, and that a declaratory judgment action is a legitimate procedure for directly testing the validity of zoning enactments beyond the thirty-day period prescribed by § 4. Several prior cases have recognized that the rehearing requirement of § 2 was not intended to burden local legislative bodies and ZBA's with responsibility for rulings on subjects that are beyond their ordinary competence, even though orders and decisions of such bodies are ostensibly covered by the statute. *Bourgeois v. Town of Bedford,* 120 N.H. 145, 412 A.2d 1021 (1980), for example, held that a failure to move for rehearing was not fatal to a direct challenge to the validity of a zoning amendment turning on the legal efficacy of the presentation of protest petitions under RSA 31:64 (Supp. 1979; repealed, superseded by RSA 675:5). "[W]hen the issue in an appeal involves a question of law rather than a question of the exercise of administrative discretion, administrative remedies need not always be exhausted." *Id.* at 149, 412 A.2d at 1024 (citations omitted). *Olson v. Litchfield,* 112 N.H. 261, 262, 296 A.2d 470, 471 (1972) is authority, albeit more general, for the same proposition, which thus construes the jurisdictional mandate to seek a rehearing from a local legislative body by the same limiting standard applied when a motion for rehearing before a ZBA is claimed to be prerequisite to appeal, *see Metzger v. Brentwood,* 115 N.H. 287, 290–91, 343 A.2d 24, 26–27 (1975). Since the charges of invalidity raised by this petition require determinations of statutory and constitutional law, not customarily passed upon by city councils, the rehearing requirement does not apply, and failure to pursue it is no bar to direct review.

It is, however, an entirely separate question whether § 4 is applicable to bar a direct challenge by means of a declaratory judgment petition filed more than "30 days after [recording] the action complained of . . . ," and the cases illustrating declaratory judgment as a procedure for directly challenging an ordinance's validity must be read with caution. Some instances of declaratory

judgment brought as direct challenges to zoning validity exemplify compliance with the thirty-day rule and carry no implication that such a challenge may be raised by petition for declaratory judgment filed outside that period. *See Rye Dev. Co. v. Town of Greenland,* 116 N.H. 520, 363 A.2d 427 (1976); *Brady v. Keene,* 90 N.H. 99, 4 A.2d 658 (1939) (probably within thirty-day period). In other cases the timing of the action is unclear, and one cannot say whether they exemplify declaratory judgment as a process for direct attack truly independent of § 4. *See, e.g., Bourgeois v. Town of Bedford supra; Stoney-Brook Dev. Corp. v. Town of Pembroke,* 118 N.H. 791, 394 A.2d 853 (1978); *Gutoski v. Winchester,* 114 N.H. 414, 322 A.2d 4 (1974).

In at least two cases, however, declaratory judgment proceedings employed for direct review of validity were clearly begun after expiration of the relevant thirty-day period. In *Olson v. Litchfield,* the plaintiff filed a petition in the superior court "to challenge the validity of the [town's 1965 zoning] amendment," 112 N.H. at 262, 296 A.2d at 470, which had been applied to prohibit expansion of a trailer park. Although the town conceded its failure to satisfy notice requirements prior to the 1965 vote, it responded to the petition on the alternative grounds that 1970 legislation had cured the 1965 defect, and that the plaintiff's failure to comply with §§ 2 and 4 was a bar to declaratory judgment. Defendant's brief in case No. 6263. The court rejected each defense, holding the curative legislation inadequate and the

> "declaratory judgment procedure a proper and accepted method to attack the validity of a zoning ordinance. . . . This is especially true where, as here, the question is one peculiarly suited to judicial rather than administrative treatment and no other adequate remedy is available to the plaintiff. Under these circumstances the rule of exhaustion of administrative remedies is inapplicable."

*Id.* at 262, 296 A.2d at 471 (citations omitted). The court thus declined to recognize any bar under § 4 or § 2 and held that if a § 4 appeal were foreclosed, the plaintiff's right to attack the ordinance collaterally, as a defense to a petition to enforce the ordinance or as an affirmative step in seeking permission to expand the park, would be inadequate as an alternative to the declaratory judgment remedy.

A second instance in which declaratory judgment was held to be a legitimate, independent process to review the validity of a zoning enactment was *Alton v. Fisher,* 114 N.H. 359, 320 A.2d 653 (1974). In that case it was not the landowner but the town of Alton that

resorted to the declaratory judgment procedure, having failed, as the reserved case indicates, to take any action under §§ 2 and 4. These failures were claimed to bar relief. It is interesting that the court did not respond by considering whether the town was a "person" within the meaning of § 4 and therefore entitled to question the validity of its own ordinance. If the answer had been no, declaratory judgment would have been the only direct remedy open to the town, and § 4 would presumably have been held to be inapplicable to the town's effort to obtain an adjudication of validity. Instead, however, the court simply noted that "[d]eclaratory judgments have been used previously to challenge the validity of zoning amendments, protest petitions and moderators' declarations. . . . The statute permitting declaratory actions has a broad remedial purpose, . . . which in this case is served by resolving the town's doubts about the validity of the zoning amendments." *Id.* at 361, 320 A.2d at 655 (citations omitted). Thus, *Alton*, like *Olson*, affirmed the general availability of declaratory judgment to litigate validity directly, and each case confirms one commentator's conclusion that

> "[t]he use of declaratory judgment actions as the means of testing the validity of land use regulations is so extensive, however, predominating over all other forms of action, that it is apparent courts seldom refuse to entertain these actions. . . ."

4 RATHKOPF, THE LAW OF ZONING AND PLANNING § 35.01[2] (1980).

It is true, of course, that as prior authority for applying this general rule to the instant case, *Olson* is the only unambiguous authority, albeit with *Alton*'s persuasive support. But *Olson* does stand as authority, and is consistent with sixty years of litigation under the declaratory judgment act, *see* Laws 1929, 86:1, in exemplifying the breadth of the remedial purposes meant to be served by the declaratory judgment process, *see Faulkner v. Keene*, 85 N.H. 147, 156, 155 A. 195, 201 (1931). Thus, the question comes down to why we should depart from *stare decisis* by accepting the city's position that declaratory judgment should not be available here. Two possible answers deserve some response.

It is sometimes urged that the thirty-day time limit of § 4 should be applied in support of the presumptive validity of an ordinance once ostensibly adopted, so that municipalities and parties to real estate transactions can depend on the terms of the ordinance without fear of unforeseeable challenges to its validity. *See Bedford Residents Group v. Town of Bedford*, 130 N.H. 632, 640, 547 A.2d 225, 230 (1988); *Olson v. Litchfield*, 112 N.H. 261, 296 A.2d 470,

brief of N.H. Municipal Association. This is an argument, it should be emphasized, for the immunity of a legislative act from direct attack, and is thus distinguishable from the reasons for according finality to a judgment rendered in a quasi-judicial proceeding. *Cf. Town of Auburn v. McEvoy*, 131 N.H. 383, 385, 553 A.2d 317, 319 (1988). As such, however, the argument is specious. The only way to provide zoning ordinances with immunity from unforeseeable attack would be to provide a bar at some point to all challenges to an ordinance's validity, however raised. But as long as an applicant for a building permit, or the defendant in a zoning enforcement action, can collaterally attack the validity of the ordinance, towns and parties to real estate transactions will have to live with the possibility of supposedly unforeseeable attacks. Needless to say, neither the city in this case, nor any other municipality so far as we are aware, has ever proposed that at some point landowners be denied the opportunity for collateral challenges to zoning ordinances, and we need not consider here the constitutional consequences of any such proposal. The point simply is that, as long as collateral attack is permissible, there will be no immunity to unexpected challenges, and applying the time restriction of § 4 to bar an action such as this simply would not provide the immunity sought.

The second argument for holding declaratory judgment unavailable here takes the form of a further question, why the legislature would have intended to provide two different procedures for such direct review, placing a time constraint on the use of the one (§ 4), if the other (declaratory judgment under RSA 491:22) had been meant to be freely available without limit of time. The answer may lie in the sequence of the relevant enactments, and in the fact that the two procedures were of markedly different scope originally. The initial version of § 4 was enacted as part of the State's original zoning enabling legislation, Laws 1925, 92:7, where it provided not for appellate review in the sense now limited by RSA 677:6 (placing the burden of persuasion on the appellant), but *de novo* review in which the superior court was authorized to substitute its judgment for that of the local legislative body on the merits of enacting the ordinance. *Scott v. Davis*, 94 N.H. at 37, 45 A.2d at 655. When the legislature adopted the declaratory judgment act four years later in 1929, it is presumed to have known that a class of litigants already had a right to *de novo* review of the merits of a zoning provision, provided that they acted within the limited thirty-day period of § 4; consistently with this knowledge, the legislature could reasonably have intended to provide some or all of that same class

with the right to seek declaratory judgment as a remedy that was more limited in scope of review, but available beyond the thirty days. In any event, the new act did not bar the availability of its declaratory judgment remedy to those already having standing to seek relief under § 4, and the breadth of the new act's remedial purposes, explained in *Faulkner v. Keene supra*, was a reason to assume the general, not restricted, availability of its remedy. *See Alton*, 114 N.H. at 361, 320 A.2d at 655. Later, as we have seen, the radical difference in the breadth of review under the two procedures was modified when *de novo* review under § 4 was eliminated by Laws 1949, 278:2. But that fact has no bearing on the scope of the declaratory judgment act as enacted twenty years earlier, and the justification for preserving both § 4 and RSA 491:22 as procedures for direct challenge to zoning enactments is a matter for consideration by the legislature, which in the seventeen years since *Olson* has left the law undisturbed.

Given the inadequacy of these arguments for overruling *Olson*, we follow its holding, despite contrary indications expressed in dicta in *Bedford Residents Group v. Bedford*, 130 N.H. at 640, 547 A.2d at 230, and *McGovern v. City of Manchester*, 130 N.H. 628, 632, 546 A.2d 1057, 1060 (1988), upon which the master reasonably relied in the instant case. Although we do not lightly recede from such recent dicta, our examination of the issue in question convinces us that *Olson*'s is the better rule.

Accordingly, Blue Jay may pursue its petition for declaratory judgment on the State law claims. The order dismissing the federal claims for compensation is treated as a dismissal without prejudice and is affirmed; otherwise the decision below is reversed.

*Affirmed in part; reversed in part; remanded.*

All concurred.