**CITY OF PORTSMOUTH NEW HAMPSHIRE, Plaintiffs–Appellants,**

v.

**Richard SCHLESINGER and William Weinstein, Defendants–Appellees.**

No. 94–1274.

United States Court of Appeals, First Circuit.

Heard April 5, 1995.

Decided June 13, 1995.

Steven E. Grill, with whom Alexander J. Walker, Jr., and Devine, Millimet & Branch,

P.A., Manchester, were on brief, for appellants.

Christopher Cole, with whom Peter S. Cowan and Sheehan, Phinney, Bass & Green, P.A., were on brief, Manchester, for appellees.

Before BOUDIN, Circuit Judge, ALDRICH, Senior Circuit Judge, and YOUNG,* District Judge.

YOUNG, District Judge.

This contract action came before the district court in exercise of its diversity jurisdiction. The law of New Hampshire controls. The record amply supports the careful findings of the district judge and thus the facts may be simply stated. It is the law of New Hampshire that is complex—so complex that, after careful reflection, we have determined to certify to the Supreme Court of New Hampshire a question concerning the interpretation of the New Hampshire statutes of limitation.

## I. BACKGROUND

The appellees Richard Schlesinger and William Weinstein (the "Developers") are real estate developers who were the sole general partners in Portsmouth Coastal Development Partners ("Portsmouth Coastal").[1] In 1985, Portsmouth Coastal acquired from the plaintiff, the City of Portsmouth (the "City"), certain real property in the City known as Mariner's Village. At the time, Mariner's Village had the greatest concentration of low income housing in the City. The Developers planned to turn the existing apartment units in Mariner's Village into condominiums, and build more condominiums as well. The proposed increase in housing density required a zoning change.

The Developers promptly commenced negotiations with City authorities to obtain this zoning change. After negotiations resulting in several draft ordinances, the City Planning Board approved a draft ordinance which provided, among other things, that the Develop-

---

* Of the District of Massachusetts, sitting by designation.

1. The Court, for the sake of simplicity, will use the single term "Developers" to refer to the conduct or actions of Portsmouth Coastal and either or both of its partners, the defendants-appellees herein.

ers build an additional 208 units in a new Special Overlay District, paying to the City $8,620 as each additional unit was built to an eventual total of $1,792,960.[2] This payment or "impact fee" was designed to compensate the City for the impact upon it expected to result from the loss of low income housing. The Developers were also to preserve some of the units as rental apartments at subsidized levels.

In further negotiations with the City, the Developers sought to build still more condominium units. Eventually, the Developers executed a promissory note as individuals and as partners of Portsmouth Coastal obligating them to pay to the City an impact fee amounting to $2,500,000 in six lump-sum payments,[3] which sum was to be placed in a housing trust fund or other entity created by the City Council. This impact fee in exchange for the zoning change allowed the Developers to construct the additional units, but obligated them to pay the City in accordance with the terms of the promissory note regardless how many units were actually built and sold, "no strings attached." On November 11, 1986, the City Council approved the requested Special Overlay District ordinance contingent on, *inter alia*, the signing of the promissory note upon which this action is based. The Developers proceeded with their development plan, made the first two payments of $400,000 each on November 1, 1987 and November 1, 1988, and then defaulted by failing to make payment on November, 1, 1989.

The City promptly filed a complaint in the District Court of New Hampshire to recover the additional $1,700,000 owed it under the Developers' promissory note. Upon the eve of a trial scheduled in 1992, the Developers moved to amend their original answer to include an "illegality" defense, i.e., that under New Hampshire law the very imposition of the impact fee itself was illegal and ultra

vires. The City claimed the Developers had waived this defense by failing timely to assert it in the manner it said was required by New Hampshire Rev.Stat.Ann. sections 677:2 and :4 ("RSA ___"). A visiting district judge allowed the amendment, rejecting the City's defense of untimely filing as matter of law.

After a two-day bench trial in 1994 upon a stipulated record, the district court held that New Hampshire law recognized the propriety of "conditional use zoning," i.e., a zoning change conditioned on a payment of an impact fee or conferral of some amenity on a municipality by the beneficiary of the change, *if* (1) the payment was directed to some permitted capital expenditure required of the City due to the zoning change, *and* (2) the payment or amenity bore some "rational nexus" to the burden to be borne by the municipality and the special benefits conferred on the developer. *See Land/Vest Properties, Inc. v. Town of Plainfield,* 117 N.H. 817, 823, 379 A.2d 200, 204 (1977) (municipality empowered to require fee for site plan and subdivision approval provided that a "rational nexus" existed between the amount of the fee and the burdens imposed on the municipality by the development). The district court held that no impact fee permissibly could be imposed to compensate the City for the loss of low income housing and went on to find factually that no rational nexus existed here as between the $2,500,000 payment sought by the City and any demonstrable burden to be borne by it due to the zoning change. Accordingly, the district court upheld the Developers' illegality defense and entered judgment for them. The City appeals.

■■■ This Court exercises *de novo* review over determinations of state law made in the course of a bench trial. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1990); *American Title Ins. Co. v. East West Fin.,* 16 F.3d 449, 454 (1st Cir.1994). The Court re-

---

**2.** There is some confusion in the record as to the total sum to be paid for the additional units. *See* Appellee's Brief at 7 ($1,792,260); *id.* at 8 ($1,796,260); Revised Draft Ordinance (Joint Appendix, Vol. II, at 304) ($1,792,260); Stipulation of Agreed Upon Facts ¶ 19 (Addendum to Appellant's Brief at A–30) ($1,796,260). While nothing turns on the point, the Court takes judicial notice

of the fact that the product of $8,620 and 208 is none of these figures, but rather $1,792,960.

**3.** By the terms of the promissory note, the Developers were to pay $400,000 on November 1st of each year from 1987 to 1991, inclusive, and $500,000 on November 1, 1993.

views mixed questions of fact and law for clear error, *Salve Regina,* 499 U.S. at 233, 111 S.Ct. at 1222 ("deferential review"); *Touch v. Master Unit Die Products, Inc.,* 43 F.3d 754, 757 (1st Cir.1995); *In re Howard,* 996 F.2d 1320, 1327–28 (1st Cir.1993), even where "the record consists entirely of stipulated and documentary evidence." *American Foreign Ins. Ass'n v. Seatrain Lines of Puerto Rico, Inc.,* 689 F.2d 295, 298 (1st Cir.1982).

The undisputed record before the district court amply supports the conclusions of the district judge that no impact fee could be imposed as a consequence of a diminution in low income housing and that, in any event, no rational nexus existed between the amount of the Developers' promissory note and any burden imposed on the City due to the zoning change. We therefore necessarily confront the timeliness of the Developers' challenge to the legality of the fee they had agreed to pay to the City.

## II. TIMELINESS

The City Council approved the Special Overlay District ordinance late in 1986 but more than five years passed (and the Developers commenced construction pursuant to the requested zoning change—and paid $800,000 on their promissory note) before it occurred to them to suggest, through counsel, that the entire deal was illegal. Too late, says the City, citing the statutory scheme set out in RSA 677 which it reads as restricting the time in which challenges to zoning-related decisions must be brought.[4] After all, the City argues, challenges to land use planning decisions by municipalities are ordinarily waived unless made within the applicable statutory time restrictions. *Dermody v. Town of Gilford Planning Bd.,* 137 N.H. 294, 296, 627 A.2d 570, 571 (1993) (appeal from planning board decision waived pursuant to RSA 677:15[I] ); *Town of Auburn v. McEvoy,* 131 N.H. 383, 388, 553 A.2d 317, 320–21 (1988) (Souter, J.) (same, even though type of conditional subdivision requirement at issue had been found unconstitutional in intervening case).

The City's reaction to the Developers' late blooming illegality defense is understandable, but it suffers from a lack of focus. As the Developers point out, the action they challenge here is not that of the local planning board but rather that of the City Council itself. Accordingly, the proper limitation, if applicable, is found in RSA 677:2 and :4, which provide that any person aggrieved by an order or decision of a local legislative body must first move for rehearing within 20 days and, that failing, may appeal to the New Hampshire Superior Court upon the grounds raised in the petition for rehearing "within 30 days after the action complained of has been recorded."

The Developers are, of course, as far beyond this statutory limitation as they are beyond RSA 677:15(I). But what of it? they say, citing *Blue Jay Realty Trust v. City of Franklin,* 132 N.H. 502, 567 A.2d 188 (1989) (Souter, J.) (petition for declaratory judgment challenging validity of zoning amendment allowed to proceed although untimely under RSA 677:2 and :4). The City joins issue on this point, arguing strenuously that *Blue Jay Realty* has no application to the undisputed facts of record here.

*Blue Jay Realty* came before the New Hampshire Supreme Court upon appeal of the dismissal of the plaintiff's action for declaratory and injunctive relief as untimely under RSA 677:2 and :4. Speaking for the court, Justice Souter explained that the plaintiff's challenge under the federal civil rights statute had properly been dismissed since the plaintiff had not first sought a variance from the local authorities, *id.* at 505–06, 567 A.2d at 191; that the rehearing requirement of RSA 677:2 was "not absolute" and "was not intended to burden local legislative bodies and [zoning boards of appeal] with responsibility for rulings on subjects

---

**4.** Under New Hampshire law, a person aggrieved by a decision of a planning board may present a petition to the Superior Court for review within 30 days after the filing of the decision pursuant to RSA 677:15(I). A person affected by an order or decision of a zoning board of adjustment, a local legislative body, or a board of appeals in regard to zoning must first move for rehearing within 20 days, RSA 677:2, and, if still unsatisfied, may then petition the Superior Court for redress within 30 days, RSA 677:4.

that are beyond their ordinary competence," *id.* at 509, 567 A.2d at 193; and "that a declaratory judgment action is a legitimate procedure for directly testing the validity of zoning enactments beyond the thirty-day period prescribed by [RSA 677:]4." *Id.; see also id.* at 510–12, 567 A.2d at 193–95. Thus reversing in part, he observed "the justification for preserving both [RSA 677:]4 and [the declaratory judgment statute] as procedures for direct challenge to zoning enactments is a matter for consideration by the legislature." *Id.* at 513, 567 A.2d at 195.

The City advances but a single lame argument in its attempt to distinguish *Blue Jay Realty.* It argues that the action of the City Council here in enacting conditional use zoning is somehow quasi-judicial as opposed to "legislative" and, therefore, the short statute of limitations applies. Rising to the bait, the Developers argue equally strenuously that the enactment of the Special Overlay District here was quintessentially "legislative" in nature. Both arguments are beside the point since, as the New Hampshire Supreme Court held in *Blue Jay Realty* itself, "the ... applicability to such legislative acts of what is now [RSA 677:4] was clearly settled in *Scott v. Davis* [94 N.H. 35, 37, 45 A.2d 654, 655 (1946) ]." *Blue Jay Realty,* 132 N.H. at 508, 567 A.2d at 192.

We necessarily proceed with our own analysis of the timeliness issue in this particular case. We "are guided ... by principles of statutory interpretation that are well settled in New Hampshire law. We begin by considering the words of the statute, and on the assumption 'that all words in [the] statute were meant to be given meaning in the interpretation of the statute.' " *Kenerson v. FDIC,* 44 F.3d 19, 23 (1st Cir.1995) (quoting *Town of Wolfeboro v. Smith,* 131 N.H. 449, 452–53, 556 A.2d 755, 756–57 [1989] ); *see also In re Village Bank & Trust Co.,* 124 N.H. 492, 495, 471 A.2d 1187, 1188–89 (1984) (courts should read statutes to avoid rendering any word or phrase thereof mere surplusage); *Blue Mountain Forest Ass'n v. Town of Croydon,* 117 N.H. 365, 372, 373 A.2d 1313, 1317 (1977) (same). Thus, when the New Hampshire Supreme Court spoke in *Blue Jay Realty,* 132 N.H. at 513, 567 A.2d at 195, of "preserving both § 4 and [the declaratory judgment remedy] as procedures for direct challenge to zoning enactments," we understand it to mean that the limitations expressed in RSA 677:2 and :4 retain some validity to foreclose some class of cases notwithstanding the vitality of the declaratory judgment remedy which is not confined to these statutory limitations.[5] The question is, therefore, into which class of cases does the present action fall?

As we read *Blue Jay Realty,* the question it poses for resolution is not an exploration of the capacity in which the City Council was acting. The question, rather, is whether those who are actively participating in the legislative process and have actual notice of the ordinance in question [6] are required promptly to exhaust the administrative remedy set forth in RSA 677:2 before having recourse to the courts under RSA 677:4 or the New Hampshire declaratory judgment statute.[7] This, in turn, depends on whether the issue to be reheard presents a question of law or a question of administrative discretion. In New Hampshire as elsewhere,

**5.** This reading is supported by reference to 1 PETER J. LOUGHLIN, NEW HAMPSHIRE MUN.PRAC.: LAND USE PLANNING AND ZONING § 3.03 (1992) which speaks of the New Hampshire Supreme Court in *Blue Jay Realty* "refining"—not overruling—the position it had taken just a year earlier in *Town of Auburn v. McEvoy,* 131 N.H. 383, 553 A.2d 317 (1988) (Souter, J.). *See also* 15 PETER J. LOUGHLIN, NEW HAMPSHIRE PRAC.: LAND USE, PLANNING AND ZONING § 26.03 (2d ed. 1992) (same).

**6.** Like the Developers here, the landowner in *Blue Jay Realty* was intimately involved in negotiations with the local New Hampshire municipality over subdivision approval and in seeking to forestall the restrictive zoning amendment it ultimately challenged in court. *Blue Jay Realty,* 132 N.H. at 503–504, 567 A.2d at 189–90. To avoid any due process concerns, we explicitly assume a point implicit in *Blue Jay Realty,* viz. any analysis of this issue must proceed on the express understanding that it is limited to those who had actual and immediate notice of each step in the enactment of the ordinance in question.

**7.** Given the plain meaning of the words in RSA 677:2 and :4, *Black Bear Lodge v. Trillium Corp.,* 136 N.H. 635, 637–38, 620 A.2d 428, 429–30 (1993), as to those cases where § 2 cuts off direct review, collateral attacks are likewise extinguished.

"when the issue ... involves a question of law rather than a question of the exercise of administrative discretion, administrative remedies need not always be exhausted." *Id.* at 509, 567 A.2d at 193 (quoting *Bourgeois v. Town of Bedford,* 120 N.H. 145, 149, 412 A.2d 1021, 1024 [1980]). Thus, where "the charges of invalidity ... require determinations of statutory and constitutional law, not customarily passed upon by city councils, the rehearing requirement does not apply, and failure to pursue it is no bar to direct review." *Id.* at 509, 567 A.2d at 193.

The question remains whether in this case the nature of the impact fee determination is an issue of administrative discretion, one passed upon by a city council, rather than an issue of law. We recognize that this determination—really one of law application to specific facts—does not fit squarely in either an "administrative discretion" or "issue of law" category. The question is a close one.

True, *Blue Jay Realty* was not a case involving an impact fee and the present case seeks no declaratory judgment but, rather, raises the purported "illegality" defense in the amended answer. These, we think, are distinctions without substantive legal merit. In significant measure, the Developers' challenge here presents a straight question of law, viz. whether the City Council could properly condition a zoning change upon payments to be made into a fund to assist in the provision of low income housing for its residents. The District Court quite properly ruled that the City Council had no business demanding such an exaction and that its conduct was ultra vires from the start. Indeed, upon this record there is no doubt but that the City Council was derelict in its duty and "set out to exact as high a payment as possible from the developers without regard to the actual impact that the development would have on low-income housing." Trial Tr., Vol. III (Feb. 10, 1994) at 13–14. More to the point here, however, is the recognition that this is a determination of law, albeit erroneous, on the part of the City Council—a determination which is committed to the courts of New Hampshire and not to a municipal governing authority. This aspect of the matter would seem to argue for application of the more expansive declaratory judgment statute of limitation.

A variety of concerns suggest that analysis ought not end at this point, however. *Blue Jay Realty,* it must be remembered, involved an appeal from the dismissal of the plaintiff's declaratory judgment action. Thus the New Hampshire Supreme Court there took the complaint on its face and canvassed the full array of the plaintiff's theories to see if any ought be allowed to proceed.

> Among those theories [were] challenges to the validity of the amendments as inconsistent with the city's master plan; as lacking support in objective criteria; as ultra vires; as intended to halt development; as directed against Blue Jay; as frustrating reasonable, investment-backed expectations; and as denying federal due process and State and federal equal protection.

*Blue Jay Realty,* 132 N.H. at 504, 567 A.2d at 190.

This panoply of legal claims is a far cry from the case before this Court. Here there is no attack at all on the Special Use Zoning District itself. Indeed, a close reading of the ordinance in question reveals that it was designed to take effect once "all documentation required by this ordinance including adequate surety for all obligations of the applicant has been approved by the City Attorney." It is thus apparent that the City Council contemplated an effective zoning ordinance as of the completion of the review by the City Attorney notwithstanding the executory nature of certain of the Developers' obligations, specifically those payment obligations evidenced by the promissory note. For all that appears from the present record, therefore, the ordinance establishing the Special Overlay District remains in full force and effect, the Developers and their grantees, if any, potentially able to reap the benefit of the increased density use there permitted. Nor does this case present any legal challenge to the concept of conditional use zoning on either constitutional or statutory grounds. Indeed, as the Developers are at pains to point out, conditional use zoning continues to be upheld as constitutional, provided that "the city [makes] some sort of individualized determination that the re-

quired dedication is related both in nature and extent to the impact of the proposed development." *Dolan v. City of Tigard,* ── U.S. ──, ──────, 114 S.Ct. 2309, 2319–20, 129 L.Ed.2d 304 (1994).

Moreover, in a realpolitik sense, it is not difficult to infer the actual nature of the negotiations from the ample record supplied by the parties. The Special Overlay District sought by the Developers required a zoning change to permit an increase in housing density as part of a considerably larger project to turn apartment units in Mariners Village into condominiums. The two parts of this project were interconnected to such an extent that they can be viewed as part of a single development. Indeed, the Developers needed the zoning change to make the entire project financially viable. There is little doubt but that completion of this large development would have had **some** impact on the city requiring capital improvements (such as sewers, storm water drainage, public road systems, public school facilities, and public safety and recreational facilities) all of which had been recognized as permissible grounds under New Hampshire law for the imposition of an impact fee. Thus it appears to have been open to the City Council to impose an impact fee in some amount under New Hampshire law—though probably much less than the City Council was seeking.

As a practical matter, of course, the Developers appear not to have cared about the use to which the impact fee was to be put; their goal was simply to negotiate as low an impact fee as possible so as to maximize their profits. The mistaken view of the City Council, however, led it to seek to impose an impact fee in an **amount** that bore no relation to the capital expenditures for which it could permissibly impose such a requirement and for purposes for which it had no right seeking compensation at all. Even so, on the assumption that the City Council **could** have imposed an impact fee in some, albeit lesser, amount for proper purposes, one can properly characterize the central issue in the negotiations as the **amount** of money the Developers would be forced to pay. Such a decision is essentially fact-specific, necessitating an understanding of and grounding in the mores and needs of the City. This is properly a matter to be considered by the City Council and determined by it in the first instance. On this line of analysis, therefore, the calculation of the impact fee can be argued to fall on the administrative discretion side of the line—thus subject to the short statute of limitation in RSA 677:2 and :4.

Then, too, to the extent that the impact fee here can be analogized to a sewer assessment or a form of tax, a very short statute of limitations would seem to be appropriate to safeguard the integrity of the municipality's revenue projections. *See, e.g.,* RSA 149–I:15 (challenges to sewer assessment must be made within 90 days); *id.* 231:127 (challenges to fees assessed benefitted landowners for public parking facilities must be made within 90 days); *cf. id.* 498–A:27, 26:2, 199:18 (challenges to assessment of damages in condemnation or eminent domain proceedings must be made within 20 or 60 days); *id.* 231:76, 371:10, 482:70 (challenges to assessments of damages due injured landowners from highway repair, public utilities, and due to dams, mills, or flowage must be made within 30 or 60 days).

Finally, it appears that changes in New Hampshire law subsequent to the imposition of the impact fee in this case may have some bearing on the appropriate statute of limitations here. The City Council approved the requested Special Overlay District on November 11, 1986. When the Developers defaulted upon the required payments, the City brought suit on December 12, 1989 and the Developers duly answered, raising no challenge to the "legality" of the impact fee itself. Effective August 17, 1991, the New Hampshire legislature added section 21—"innovative land use controls"—to RSA 674. 1991 N.H.Laws 283:2. This section codified the pre-existing New Hampshire common law and contained explicit guidance for the imposition of impact fees. Most important to the present discussion, however, the added section provided expressly that:

> Unless otherwise specified in the ordinance, any decision under an impact fee ordinance may be appealed in the same manner provided by statute for appeals from the officer or board making that deci-

sion, as set forth in RSA 676:5 [appeals to board of adjustment must be made "within a reasonable time"], RSA 677:2–14 [petition for rehearing of board of adjustment decision must be filed within 20 days, application for review to Superior Court within 30 days], or RSA 677:15 [appeal of planning board decision must be filed within 30 days], respectively.

RSA 674:21(V)(f). It thus seems fairly clear that, had this dispute arisen subsequent to the enactment of RSA 674:21, the short statute of limitations therein described would apply. Moreover, since New Hampshire applies a changed statute of limitation to causes of action already accrued, it can be argued that, even if the more generous statute of limitation pertaining to declaratory judgment actions had applied at the time of passage of the Special Overlay District, the enactment of RSA 674:21 required that the illegality challenge be raised within the thirty days following the effective date of the statute or be forever barred. *Norton v. Patten*, 125 N.H. 413, 416, 480 A.2d 190, 192 (1984) (King, C.J.) (quoting *Willard v. Harvey*, 24 N.H. 344, 355 [1852] ["[S]tatutes of limitation may be changed at the pleasure of the legislative power, either by enlarging or restricting the period within which suits may be brought; and it is wholly immaterial whether the time of limitation has already expired in part or not, provided a sufficient time remains before any claim in question becomes barred, to enable the claimant by the use of reasonable diligence to save his claim by a suit"] ).

The trouble with all these arguments grows out of the fact that neither party here has fully developed them given their somewhat skewed approach to *Blue Jay Realty*. In these unique circumstances, therefore, given the complexities of the decisional law of New Hampshire, we consider it advisable to certify to the Supreme Court of New Hampshire the ultimate question of New Hampshire law presented by this case, with jurisdiction retained pending that determination.

## CERTIFICATION

For the reasons discussed in *City of Portsmouth v. Richard Schlesinger, et al.*, No. 94–1274, a question of New Hampshire law on which we are unable to find clear, controlling precedent in the decisions of the Supreme Court of New Hampshire may be determinative of the case, accordingly we certify the following question to the Supreme Court of New Hampshire pursuant to its Rule 34:

Are the statutes of limitation set forth in RSA 677:2 and :4 applicable to the so-called "illegality" defense raised by the Developers in the instant case?

We have stated and discussed the facts relevant to the question certified in *City of Portsmouth v. Richard Schlesinger, et al., supra.*

The Clerk will transmit this question and our opinion in this case, along with copies of the briefs, exhibits, and appendix to the Supreme Court of New Hampshire.