Grafton
No. 92-070

FINN M.W. CASPERSEN AND BARBARA M. CASPERSEN,
TRUSTEES OF A REVOCABLE TRUST DATED DECEMBER 27, 1972

v.

TOWN OF LYME & a.

June 27, 1995

*Castaldo, Hanna & Malmberg, P.C.,* of Concord (*Neil F. Castaldo* and *Steven L. Winer* on the brief, and *Mr. Castaldo* orally), for the plaintiffs.

*Baldwin & De Seve,* of Concord (*Carolyn W. Baldwin* on the brief and orally), for the defendant, Town of Lyme.

*Daschbach, Kelly and Cooper, P.A.,* of Lebanon (*Joseph F.Daschbach on the brief and orally),* for the intervenors.

*Jed Z. Callen,* of New Boston, by brief for the American Planning Association, as *amicus curiae.*

*H. Bernard Waugh, Jr.,* of Concord, by brief for the New Hampshire Municipal Association, as *amicus curiae.*

*David L. Harrigan,* of Concord, by brief for the Society for the Protection of New Hampshire Forests, as *amicus curiae.*

HORTON, J. The plaintiffs, Finn M.W. Caspersen and Barbara M. Caspersen, trustees, appeal a decision of the Superior Court (*Perkins,* J.) upholding the validity of a zoning ordinance enacted by the defendant, Town of Lyme (town). On appeal, the plaintiffs argue that a provision in the ordinance that prohibits lot sizes of less than fifty acres in a mountain and forest district: (1) violates their substantive due process and equal protection rights under the State and Federal Constitutions; (2) is exclusionary; (3) violates New Hampshire's controlled growth statutes; and (4) was improperly adopted. We affirm.

The town is a rural community situated on the western edge of the State, roughly at the midpoint of the border between New Hampshire

and Vermont. It is bounded on the west by the Connecticut River and on the east by mountainous, undeveloped terrain.

The plaintiffs own roughly 800 acres of land in the southeast corner of town, which they purchased between 1962 and 1990. They manage the property for forestry. For tax purposes, they keep all but a few acres classified as open space land. *See* RSA 79-A:2, IX (Supp. 1994). The plaintiffs have never attempted to develop their land and have no plans to do so.

In 1989, the town adopted a comprehensive zoning ordinance which is the subject of this appeal. In the years preceding the town's adoption of the zoning ordinance, the town passed numerous general ordinances regulating certain land uses. During the early 1980's, the town's planning board began developing a master plan pursuant to RSA 674:1-:4 (1986 & Supp. 1994). In 1985, having completed the master plan, the town began work on a comprehensive zoning ordinance.

The first ordinance proposal was rejected by the voters. This proposal allowed only one dwelling per lot and prohibited subdivision. The voters were concerned about these provisions. The planning board, in the words of one of its members, "went back to the drawing board."

The present version of the zoning ordinance permits forestry and single family dwellings within the mountain and forest district. It establishes a minimum conforming lot size of fifty acres. The stated objectives of the mountain and forest district include: (1) encouraging the continuation of large tracts of forest land; (2) encouraging "forestry and timber harvesting," while permitting other compatible uses including low density development; (3) protecting wildlife habitat and natural area; and (4) avoiding unreasonable town expenses.

Two public hearings on the revised ordinance were held in January and February 1989. On March 6, 1989, the plaintiffs and other landowners from the proposed mountain and forest district submitted a protest petition to the town pursuant to RSA 675:5 (1986) (current version at RSA 675:5 (1986 & Supp. 1994)). The revised ordinance was passed at a regular town meeting. Less than a two-thirds majority voted for its passage.

The plaintiffs challenged the ordinance. The town's board of selectmen held a rehearing but did not sustain the plaintiffs' challenge. The plaintiffs appealed to the superior court. *See* RSA 677:4 (1986) (current version at RSA 677:4 (Supp. 1994)). Several town residents intervened in the action in support of the town. The superior court upheld the validity of the ordinance. This appeal followed.

## I. Standing to Challenge Exclusionary Zoning

In their appeal to the superior court, the plaintiffs complained that the zoning ordinance is exclusionary because it effectively precludes development of low- or moderate-income housing on their property in the

mountain and forest district. The trial court ruled that the plaintiffs lacked standing to challenge the ordinance on that basis. We agree.

The plaintiffs appealed to the superior court under the provisions of RSA 677:4. A party may appeal an adverse zoning action: (1) by way of statutory appeal, *see* RSA 677:2 (1986) (current version at RSA 677:2 (Supp. 1994)) and RSA 677:4; (2) by way of declaratory judgment, *see Blue Jay Realty Trust v. City of Franklin,* 132 N.H. 502, 503, 504, 567 A.2d 188, 193, 195 (1989); or (3) by way of an equitable proceeding, *see Soares v. Atkinson,* 129 N.H. 313, 314, 529 A.2d 867, 867 (1987) (underlying action commenced by bill in equity seeking injunctive relief). A facial challenge to a zoning ordinance may be initiated by way of statutory appeal, *see Towle v. Nashua,* 106 N.H. 394, 395–96, 212 A.2d 204, 205 (1965), or declaratory judgment, *see Gutoski v. Town of Winchester,* 114 N.H. 414, 415, 322 A.2d 4, 5 (1974). A challenge to zoning action as applied to a particular property may be initiated by way of statutory appeal, *see, e.g., Narbonne v. Town of Rye,* 130 N.H. 70, 72, 534 A.2d 388, 389 (1987), declaratory judgment, *see Blue Jay Realty,* 132 N.H. at 503–04, 567 A.2d at 193–95, or equitable proceeding, *see Soares,* 129 N.H. at 314, 529 A.2d at 867.

To have standing to take a direct statutory appeal from a zoning action of a legislative body, the appealing party must have been "aggrieved" by that action. RSA 677:4 (1986); *see Shaw v. City of Manchester,* 118 N.H. 158, 160, 384 A.2d 491, 493 (1978). Aggrievement is found when the appellant shows a direct definite interest in the outcome of the proceedings. *See Weeks Restaurant Corp. v. City of Dover,* 119 N.H. 541, 544, 404 A.2d 294, 296–97 (1979). The existence of this interest, and the resultant standing to appeal, is a factual determination in each case. *Id.* at 544–45, 404 A.2d at 296.

To have standing to appeal the validity of the zoning ordinance to the superior court, the plaintiffs had to show that they were "aggrieved" by the town's decision to adopt the ordinance. RSA 677:4 (1986). Whether the plaintiffs have a sufficient interest in contesting the effect of the ordinance on the availability of low- or moderate-income housing so as to be aggrieved by the alleged exclusionary effect of the ordinance requires a factual examination of the circumstances.

The plaintiffs own land in the mountain and forest district and, therefore, themselves, are not excluded from the area by the alleged exclusionary effect of the ordinance. Although they allege that the ordinance "makes it financially impracticable for developers to build affordable housing," they admit that they are not in the construction business and have no present or future intention to provide low- or moderate-income housing on their own land. The plaintiffs' general interest in a diverse community is not sufficient to

sustain their standing on this issue. *Warth v. Seldin,* 422 U.S. 490, 512–14 (1975). Based on the record below, we affirm the trial court's factual finding that the plaintiffs are not sufficiently aggrieved by the ordinance to challenge the alleged exclusionary effect of the ordinance on others.

## II. Enactment of the Zoning Ordinance

The plaintiffs contend that the ordinance was not validly enacted because it was only passed by a simple majority vote. They argue that the pre-existing land use ordinances were sufficiently comprehensive, when taken together, to constitute *de facto* zoning, and therefore the approval of the *de jure* ordinance in 1989 was not an adoption of a new zoning ordinance, but an amendment of the existing *de facto* zoning. Accordingly, they argue that pursuant to RSA 675:5, I (1986) (current version at RSA 675:5 (Supp. 1994)), a two-thirds majority favorable vote was required to amend the *de facto* scheme and pass the zoning ordinance.

"When legislation attempts to control population growth through definite and detailed control of land development, it must be enacted in accordance with the zoning statute." *Beck v. Town of Raymond,* 118 N.H. 793, 799, 394 A.2d 847, 851 (1978). In *Beck,* the Town of Raymond enacted a growth control ordinance pursuant to its general police power. We held that the enactment of the ordinance was an invalid exercise of the town's police power because the ordinance was "so comprehensive" as to require compliance with the zoning enabling act. *Id.* at 799–800, 394 A.2d at 851. Although the plaintiffs rely on *Beck* as support for their argument, the claim brought by the plaintiffs differs from the one brought in *Beck.* In this case, the town complied with the zoning enabling act in adopting the ordinance. Moreover, even if our analysis in *Beck* applied to the facts of this case, we are not persuaded that the land use regulations enacted before the plan were so comprehensive as to constitute *de facto* zoning.

██ Prior to adopting the comprehensive zoning ordinance in 1989, and pursuant to several enabling acts, the town adopted a mobile home and trailer park ordinance, a sign ordinance, a town beach bylaw, a building permit ordinance, excavation regulations, driveway access regulations, a floodplain ordinance, and a large institutional land ordinance. Considered collectively, these regulations do not represent "definite and detailed" legislation designed to control land development. *See Beck,* 118 N.H. at 799–800, 394 A.2d at 851. Whereas the growth control ordinance in *Beck* affected all property development in Raymond, these ordinances regulate a set of disparate land uses. Because we do not find that the pre-existing land use regulations were "so comprehensive" as to acquire the status of *de facto* zoning, we hold that the town properly enacted the zoning ordinance by a simple majority.

*III. Equal Protection and Substantive Due Process*

■ The plaintiffs argue that the ordinance violates their substantive due process and equal protection rights under the State and Federal Constitutions without distinguishing between the two arguments. Consideration of the plaintiffs' substantive due process claim is appropriate. The plaintiffs' amended petition to appeal to the superior court, although not using the words, states a substantive due process claim and asserts an unconstitutional action. Further, a substantial portion of the trial record is devoted to the merits of a substantive due process claim. Such is not the case with any claim of equal protection. Other than under the subject of exclusionary zoning, which is dealt with above, there is no claim articulated, either in the amended petition to appeal or in the trial record, that the ordinance fails to provide equal protection to any person or class. There are passing and undeveloped references to equal protection in the plaintiffs' requests for findings of fact and rulings of law and a passing reference to equal protection in the order of the trial court. The plaintiffs' notice of appeal includes equal protection in its general challenge to the constitutionality of the ordinance, and the plaintiffs' brief makes a general claim that the equal protection clauses "protect individuals' property rights from unrestrained intrusion by the government in the form of zoning." Such a broad statement may be true of substantive due process, but it is hardly true of equal protection, in the case where the unrestrained intrusion is equally applied to all persons and classes. Therefore, we will address only whether the ordinance violates the plaintiffs' substantive due process rights. *See* N.H. CONST. pt. I, arts. 2, 12, 15; U.S. CONST. amend. XIV, § 1.

In deciding this case, we first look to our own State Constitution, and then, if necessary, to the Federal Constitution to determine whether it provides the plaintiffs greater rights, *State v. Ball,* 124 N.H. 226, 232, 471 A.2d 347, 351 (1983), citing decisions of federal courts and courts of other jurisdictions when helpful in analyzing and deciding the State issue. *State v. Maya,* 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Because federal law is not more favorable to the plaintiffs in this case, we make no separate federal analysis. *See Resolution Trust Corp. v. Town of Highland Beach,* 18 F.3d 1536, 1549 (11th Cir. 1994).

■ A substantive due process challenge questions the fundamental fairness of "local zoning ordinances . . . both generally and in the relationship of the particular ordinance to particular property under particular conditions existing at the time of litigation." 1 E. ZIEGLER, JR., RATHKOPF'S THE LAW OF ZONING AND PLANNING, § 3.01[1], at 3-3 (1994) (footnote omitted). "The appropriate inquiry for reviewing [a] substantive due process claim is whether the claimants proved that the provision constitutes a restriction on property rights that is not rationally related to the town's legitimate goals." *Asselin v.*

*Town of Conway,* 137 N.H. 368, 372, 628 A.2d 247, 250 (1993) (emphasis omitted). Given the presumption that a properly enacted zoning ordinance is valid, our analysis focuses on whether the record supports the trial court's decision upholding the ordinance. *Id.*

The plaintiffs concede that the ordinance was passed for legitimate purposes, including to encourage forestry and timber harvesting in the mountain and forest district. *See* RSA 672:1, III-c (Supp. 1994) (effective date after passage of subject ordinance). Nevertheless, the plaintiffs maintain that the ordinance is constitutionally infirm because the record does not support the conclusion that the fifty-acre minimum lot size in the mountain and forest district is rationally related to the accomplishment of those goals. We disagree.

 Robert Burke, an expert in forestry, testified that small lots create access problems because of the necessity to gain permission to cross abutting lots. He testified that "on small properties you don't have many opportunities for harvesting," and therefore "size has an important effect" on the profitability of forestry enterprises. Burke noted that on fifty acres, there are more opportunities for harvesting because you have the potential to grow enough different kinds of trees. He concluded that fifty acres is the minimum lot size where forestry becomes profitable. The evidence supports a finding that the fifty-acre minimum lot size in the mountain and forest district is rationally related to the town's legitimate goals of encouraging forestry and timber harvesting in that district. There is no arbitrary maximum lot size controlling a substantive due process analysis. The constitutionality of a lot size must be assessed in light of the town's zoning goals. *See, e.g., Gisler v. County of Madera,* 112 Cal. Rptr. 919, 921–22 (Cal. Ct. App. 1974) (eighteen acres for agricultural use); *D & R Pipeline Const. Co. v. Greene County,* 630 S.W.2d 236, 237 (Mo. Ct. App. 1982) (ten acres for reservoir protection); *So. Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp.,* 456 A.2d 390, 471 (N.J. 1975) (five acres for open space); *Oregonians in Action v. LCDC,* 854 P.2d 1010, 1014–15 (Or. Ct. App. 1993) (eighty acres for new farm parcels); *Codorus Tp. v. Rodgers,* 492 A.2d 73, 75 (Pa. Commw. Ct. 1985) (fifty acres for agricultural use); *see also* Wis. Stat. § 91.75(1) (1992) (legislatively created thirty-five acre minimum for farmland preservation); NATIONAL AGRICULTURAL LANDS STUDY, THE PROTECTION OF FARMLAND: A REFERENCE GUIDEBOOK FOR STATE AND LOCAL GOVERNMENTS 114–16 (1981) (forty-five selected communities with agricultural minimum lot sizes ranging from ten to 640 acres, average being sixty-three acres). If a town's goals are legitimate, and a large minimum lot size a reasonable means of accomplishing those goals, then there is no constitutional violation.

■ Nor do we find support in the record for the plaintiffs' argument that the fifty-acre minimum is unreasonable when considered in a regional context. The plaintiffs did not offer evidence comparing the means and objectives of other towns with similar geographic characteristics. The mere fact that other towns in the State have minimum lot sizes less than fifty acres does not render the Lyme ordinance unconstitutional. Many of those zoning districts are, no doubt, residential or commercial in character. The fifty-acre minimum lot size would probably be invalid as applied to a residential or commercial zoning district. The primary objective of the mountain and forest district is the encouragement of the continuation of large tracts of forest land to promote "forestry and timber harvesting." TOWN OF LYME ZONING ORDINANCE, art. III, § 3.257 (1989).

■■ Finally, we note that the plaintiffs have argued that the fifty-acre minimum lot size is unconstitutional because better alternatives exist to accomplish the town's goals of encouraging forestry and timber harvesting. An analysis of least restrictive alternatives is not part of a rational basis analysis. *Heller v. Doe by Doe,* 113 S. Ct. 2637, 2648 (1993). We will not second-guess the town's choice of means to accomplish its legitimate goals, so long as the means chosen is rationally related to those goals.

*IV. Growth Control*

The plaintiffs' final argument is that the ordinance is a growth control ordinance that did not comply with RSA 674:22 (1986). They maintain that the fifty-acre minimum operates as a growth control because it effectively halts development in one-half of the town's area, thereby restricting growth in the town as a whole.

RSA 674:22 provides:

> The local legislative body may further exercise the powers granted under this subdivision to regulate and control the timing of development. Any ordinance imposing such a control may be adopted only after preparation and adoption by the planning board of a master plan and a capital improvement program and shall be based upon a growth control management process intended to assess and balance community development needs and consider regional development needs.

■ Growth control ordinances are intended "to regulate and control the timing of development." RSA 674:22; *see Stoney-Brook Dev. Corp. v. Town of Fremont,* 124 N.H. 583, 589, 474 A.2d 561, 564 (1984). Applying this definition to this case, we hold that the Lyme ordinance is not a growth control ordinance pursuant to RSA 674:22.

The ordinance places no time-related controls on the mountain and forest district. *See, e.g., Stoney-Brook Dev. Corp.*, 124 N.H. at 586, 474 A.2d at 562 (annual limits on building permits); *Beck*, 118 N.H. at 795, 394 A.2d at 848 (number of annual building permits based on town-wide annual growth rates). Nothing in the ordinance prevents development of the district to its full capacity immediately, albeit the density of such development would be lower in the mountain and forest district than in the other districts. "Any denial of subdivision approval will naturally have the secondary effect of limiting growth." *Zukis v. Town of Fitzwilliam*, 135 N.H. 384, 387, 604 A.2d 956, 958 (1992). RSA 674:22, however, does not apply to a zoning action merely because the zoning action has an effect on growth. The Lyme ordinance is not designed to "regulate and control the timing" of development in the town. We hold that RSA 674:22 is not applicable to this case and affirm the trial court's refusal to find that the "ordinance is an invalidly enacted growth control ordinance."

In summary, we hold that the plaintiffs lack standing to bring an exclusionary zoning claim, that the Lyme zoning ordinance was properly enacted under RSA chapter 675, that the provisions of the ordinance do not violate the plaintiffs' substantive due process rights, and that the ordinance is not a growth control ordinance pursuant to RSA 674:22. The trial court's decision is affirmed.

*Affirmed.*

JOHNSON and THAYER, JJ., did not sit; BROCK, C.J., concurred specially; BATCHELDER, J., concurred in the opinion of HORTON, J.

BROCK, C.J., concurring specially: I concur in the result reached by the majority in this case. I would reach a different result under the substantive due process analysis had the plaintiffs not conceded, at the trial court and on appeal, that the ordinance was passed for legitimate purposes. Section 3.257 of the ordinance reads, in its entirety, as follows:

> *Mountain and Forest Conservation District.* The boundaries of the Mountain and Forest Conservation District are shown on the Lyme Zoning Map. Lands in the Mountain and Forest District are extremely remote and are reserved for very low intensity land uses. The *primary objective* of the Mountain and Forest Conservation District *is to preserve and protect Lyme's natural heritage of large tracts of undeveloped forest land in the more remote sections of Town* and thereby serve the following additional objectives: (1) encourage continuation of large contiguous tracts of forest land in private ownership to provide forest resources and outdoor recreation; (2) encourage forestry and timber harvesting and permit other compatible uses including very low intensity development that will

allow the land to appreciate in value; (3) protect natural areas; (4) protect wildlife habitat; (5) maintain ecological balance; (6) preserve scenic views; (7) avoid the burden of unreasonable municipal expenditures for the purpose of providing municipal services to remote and difficult locations; and (8) avoid the risk to health and safety of municipal employees and volunteers of providing emergency services to remote and difficult locations.

(Emphasis added.) I would have a difficult time finding the "primary objective" of the ordinance, preserving and protecting a "heritage" of "large tracts of undeveloped forest land," to be a legitimate zoning purpose. I also fail to understand how a fifty-acre minimum lot size requirement on residential land relates to the encouragement of commercial forestry.

Further, I believe that, given an appropriate occasion, we should review our holding in *Asselin v. Town of Conway*, 137 N.H. 368, 372, 628 A.2d 247, 250 (1993), that substantive due process challenges to zoning ordinances are evaluated under the rational basis standard, while equal protection challenges to those same ordinances are reviewed with heightened scrutiny. The constitutional guarantees of substantive due process and equal protection involve complementary concepts: If a challenged law burdens all persons equally when they exercise a particular right, we review the law under the due process clause, but if the law distinguishes between who may and may not exercise a particular right, then we review it under the equal protection guarantee. *E.g.*, 2 R. ROTUNDA & J. NOWAK, TREATISE ON CONSTITUTIONAL LAW: SUBSTANCE AND PROCEDURE § 15.4, at 400 (2d ed. 1992). The difference in analysis is not based on the individual right being exercised or infringed upon; it is, rather, based on the way that the challenged law or action operates on individuals. Under the United States Constitution, the identity of scrutiny seems never to have been challenged: "Analysis under the equal protection clause of the fourteenth amendment is identical to that used under the due process clauses." *Id.* § 14.7, at 370.

Ownership, use, and enjoyment of property are fundamental rights protected by both the State and Federal Constitutions. *Town of Chesterfield v. Brooks*, 126 N.H. 64, 67, 489 A.2d 600, 603–04 (1985); *see Asselin v. Town of Conway*, 135 N.H. 576, 577–78, 607 A.2d 132, 133 (1992). Zoning ordinances should be reviewed with heightened scrutiny, *Brooks*, 126 N.H. at 69, 489 A.2d at 604, regardless of the nature of the constitutional challenge made to them.