**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2021-0543, <u>Christopher Andrews & a. v. Kearsarge Lighting Precinct</u>, the court on August 31, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiffs, Christopher and Kelly Andrews, appeal an order of the Superior Court (<u>Ignatius</u>, J.) affirming a decision by the Kearsarge Lighting Precinct Zoning Board of Adjustment (ZBA) to uphold citations issued to the plaintiffs by the intervenor-defendant, the Kearsarge Lighting Precinct Board of Commissioners (BOC). We affirm in part, reverse in part, and remand.

I. <u>Background</u>

The Kearsarge Lighting Precinct (KLP) is a village precinct established in 1957 within the towns of Conway and Bartlett. The plaintiffs own two properties in the KLP, which they purchased in 2011 and 2013, respectively, and use for short-term vacation rentals. The plaintiffs' primary residence is in Massachusetts.

In September 2017, the BOC held a public hearing on "vacation property rentals" in response to public complaints about disruptive behavior of visitors staying in the area. The meeting primarily focused on four properties in the KLP that were used for short-term rentals, including the plaintiffs' two properties. Members of the public commented that local property owners did not benefit from vacation rentals and that "[n]on owner operated rentals are not allowed in our zoning ordinance." The KLP's zoning ordinance contains a provision (the Guest Provision) under "Criteria for Permitted Uses" for residential properties, which states: "All residential properties that offer sleeping accommodations to transient or permanent guests shall be owner occupied and operated."

A ZBA member participated in this meeting as a member of the public and asked: "Since these rentals have not been enforced in the past does it make it not enforceable?" The KLP's counsel responded that the BOC could enforce the Guest Provision. The son of a ZBA member, Member Wroblewski, also attended this hearing. The BOC unanimously voted to have the KLP's counsel draft citations for the four properties. The BOC approved the citations

at a public meeting in October 2017.  The BOC subsequently sent the plaintiffs two citations stating that they violated the Guest Provision at both of their properties, as each "[h]ouse [was] being offered for sleeping accommodation to transient guests without being owner occupied and operated."  The BOC also sent citations to the owners of the other properties at issue.

Stephen Gleason, one of the other property owners, appealed the BOC's decision to the ZBA.  At the ZBA hearing addressing the appeal in December 2017, counsel for Gleason requested a poll of the ZBA members "to make sure that they don't have an opinion or a public position on this issue."  The members agreed to poll themselves and responded that none of them had a preconceived opinion.  At a public hearing in January 2018, the ZBA voted to deny Gleason's administrative appeal.

In December 2017, the plaintiffs also appealed their citations from the BOC to the ZBA.  In February 2018, the ZBA held a public hearing on the plaintiffs' appeal.  The plaintiffs were represented by the same counsel as Gleason.  Counsel "referenced his previous arguments from the Gleason hearing," including that the Guest Provision was ambiguous and that the BOC had not historically enforced the provision in this manner.  Counsel presented evidence that many property owners in the KLP used their properties for short-term vacation rentals.  A ZBA member noted that "the ZBA opinion w[ould] likely be similar to the Gleason appeal."  The ZBA voted to delay deliberations and a final vote until a subsequent meeting.

At the next meeting a few weeks later, a ZBA member presented a draft decision denying the plaintiffs' appeal, which was read aloud and discussed.  The ZBA unanimously voted to uphold the BOC's citations.

The ZBA subsequently sent a letter to the plaintiffs explaining its decision.  The ZBA maintained that the ordinary meaning of the Guest Provision's terms was clear.  According to the ZBA, the provision's purpose was to "maintain a quiet peaceful neighborhood made up of residents, not transients," and it achieved this goal, in part, by requiring "owner[s to remain at the] residence on the property in order to serve as a check on guest behavior which might otherwise be incompatible with the neighborhood."  The ZBA concluded that, even if the Guest Provision were ambiguous, the plaintiffs failed to identify any previous instance in which the BOC interpreted the Guest Provision as inapplicable to short-term rentals.

After receiving the letter, the plaintiffs moved for a rehearing.  The ZBA reviewed the plaintiffs' motion at a public hearing in March 2018 and voted to deny it.  The plaintiffs appealed the ZBA's decision to the trial court pursuant to RSA 677:4 (2016).  In April 2021, the trial court held a hearing on the plaintiffs' appeal.  In September 2021, the trial court issued an order affirming

2

the ZBA's decision.  The plaintiffs filed a motion to reconsider, which the trial court denied.  This appeal followed.

II. Analysis

Our review in zoning cases is limited.  Dietz v. Town of Tuftonboro, 171 N.H. 614, 618 (2019).  "The party seeking to set aside the ZBA's decision bears the burden of proof on appeal to the trial court."  Id. (quotation omitted).  "The factual findings of the ZBA are deemed prima facie lawful and reasonable, and will not be set aside by the trial court absent errors of law, unless the court is persuaded, based upon a balance of probabilities, on the evidence before it, that the ZBA's decision is unreasonable."  Id. (quotation omitted).  "The trial court's review is not to determine whether it agrees with the zoning board of adjustment's findings, but to determine whether there is evidence upon which they could have been reasonably based."  Id. (quotation omitted).  "The trial court reviews the ZBA's statutory interpretation de novo."  Id.

"We will uphold the trial court's decision on appeal unless it is not supported by the evidence or is legally erroneous."  Id. (quotation omitted).  "We review the trial court's statutory interpretation de novo."  Id. (quotation omitted).

A

The plaintiffs argue that the trial court erred in its consideration of their procedural due process claim.  Part I, Article 15 of the State Constitution provides, in relevant part: "No subject shall be . . . deprived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land . . . ."  N.H. CONST. pt. I, art. 15.  "Law of the land in this article means due process of law."  State v. Veale, 158 N.H. 632, 636 (2009) (quotation omitted).  "The ultimate standard for judging a due process claim is the notion of fundamental fairness."  Id. at 637 (quotation omitted).

On appeal, the plaintiffs argue that "[w]hile the Trial Court properly recites the law relative to procedural due process, its consideration of individual claims constituting the overall due process claim was flawed."  Citing Appeal of Lathrop, 122 N.H. 262 (1982), the plaintiffs assert that "[i]n assessing whether there was bias or prejudgment, a court is to look at the conduct of the board members as a whole, rather than looking at statements or conduct in isolation."  However, as noted by the ZBA and the BOC in their memorandum of law, Lathrop does not stand for this proposition.  Rather, in Lathrop, this court determined that "[t]he entire series of events contained in the record leads us to conclude that the appellants have made a sufficiently strong showing that the [New Hampshire Water Resources Board] had determined the outcome prior to the hearing and decision."  Lathrop, 122 N.H.

3

at 266. However, this court did not hold that assessing possible bias requires a global view of the board members collectively or that members' statements or conduct cannot be evaluated separately from one another. See id. Accordingly, we are not persuaded by the plaintiffs' argument that the trial court erred.

The plaintiffs argue that Member Wroblewski was biased in that his "son was one of the complainants giving rise to the appeals before the ZBA and Member Wroblewski had discussed the case with his son outside of the public hearing process." Regarding Member Wroblewski's general familial relationship with his son, we conclude that this issue was not "raised at the earliest possible time." Fox v. Town of Greenland, 151 N.H. 600, 604 (2004). We have previously noted that "trial forums should have a full opportunity to come to sound conclusions and to correct errors in the first instance." Id. (quotation omitted). In this case, the plaintiffs had the burden to raise their concern about Member Wroblewski "as soon as they became aware of the grounds for the objection so that the ZBA would have the opportunity to correct any problem." Id. The record on appeal indicates that, although they had concerns regarding Member Wroblewski's impartiality at the time of the ZBA hearing, they did not raise a specific objection about his alleged bias. Thus, this issue is unpreserved for our review.

The plaintiffs further argue that they later received in discovery emails from Member Wroblewski indicating that he discussed the circumstances of this case with his son and was therefore biased. Disqualification is governed by RSA 673:14, which provides that a member shall be disqualified "if that member has a direct personal or pecuniary interest in the outcome which differs from the interest of other citizens, or if that member would be disqualified for any cause to act as a juror upon the trial of the same in any action at law." RSA 673:14, I (2016).

These emails have not been provided to us on appeal. However, the trial court found that Wroblewski emailed another ZBA member that "'over the holiday weekend, we had some lively conversations about the current challenges facing the KLP' and that his 'son in law . . . was a lawyer in Brooklyn and participated and offered his perspective.'" (Brackets omitted.) Wroblewski further noted that his son was "involved in these discussions" and "relayed that he asked his son if he would consider being Member Wroblewski's alternate for the hearing, and recommended that [another member] reach out to [his son] to further discuss that proposal." Wroblewski's son did not participate as an alternate member.

The trial court determined that "[a]fter reviewing the entire email, the court does not find it demonstrates Member Wroblewski prejudged or was otherwise biased against the plaintiffs' appeal." (Record citation omitted.) The court explained that "[i]n the email, he merely notes that he discussed the

4

'challenges' facing the KLP with his son and son-in-law." The court reasoned that "[w]hile it is true that his son appears to have complained about the plaintiffs' appeal, Member Wroblewski did not himself express any opinion about the plaintiffs' appeal or the propriety of his son's complaint in the email, and there is no evidence that he did so at any other time." (Record citation omitted.) Based on the record on appeal, we agree that these general statements by Wroblewski referring to "lively conversations" and discussions of "challenges" going on in the community do not show prejudgment, prejudice, or a personal or pecuniary interest in the outcome of the plaintiffs' case. See RSA 673:14, I; Dietz, 171 N.H. at 618 ("We will uphold the trial court's decision on appeal unless it is not supported by the evidence or is legally erroneous.").

The plaintiffs also argue that "contrary to the Trial Court's finding, Member Lee, and the ZBA in general, repeatedly rel[ied] upon information outside of the record to inform its decision in this case thereby further contributing [to] the fundamental unfairness of the proceedings and denying [the plaintiffs] procedural due process." However, "[w]e have previously held that ZBA members may base their conclusions upon 'their own knowledge, experience and observations,'" as well as upon "their common sense." Dietz, 171 N.H. at 624 (quoting Biggs v. Town of Sandwich, 124 N.H. 421, 427 (1984)). Moreover, the plaintiffs have not shown how, under these circumstances, such outside information amounted to fundamental unfairness so as to constitute reversible error. Therefore, the plaintiffs have not shown that the trial court's procedural due process determination is unsupported by the evidence or is legally erroneous.

B

The plaintiffs next argue that the trial court erred in finding no substantive due process violation. The ZBA and the BOC contend that this issue is not preserved for appeal. We agree that the issue is not preserved.

In their motion for rehearing before the ZBA, the plaintiffs argued that the Guest Provision violates substantive due process because it forbids residential owners from renting their residential property without being owner occupied, yet does not prohibit owners of apartment houses from doing the same. The trial court understood the plaintiffs to be arguing this same point on appeal. The trial court concluded that "[g]iven the proffered purpose of the Guest Provision, the KLP could rationally choose to regulate apartment houses for longer-term tenants differently from short-term rentals of residential properties." In their motion for reconsideration, the plaintiffs asserted only that "the Court ignore[d] that the proffered purposes for the Guest Provision intend to regulate persons, rather than the land itself, and, therefore, is not a legitimate governmental interest for zoning purposes."

On appeal to this court, the plaintiffs now contend that "the Guest Provision requires businesses offering sleeping accommodations (i.e. those in the hospitality industry) in a residential setting to be owner occupied and operated and has nothing to do with the rental of single homes." The plaintiffs argue that "the substantive due process inquiry [before the trial court] should have been whether applying a provision intended to govern the ownership and operation of the hospitality businesses to single homes was rationally related to a legitimate governmental interest."

The plaintiffs' argument on appeal is substantially different from the one made before the ZBA and the trial court. An issue not raised before the ZBA and on appeal to the trial court is not preserved for our review. RSA 677:3, I (2016); Dube v. Town of Hudson, 140 N.H. 135, 138 (1995). Therefore, we decline to consider this argument.

C

Regarding their equal protection claim, the plaintiffs argue that the trial court "improperly conflated an estoppel based selective enforcement claim and otherwise failed to address the claim under the current framework." We construe this argument to mean that the plaintiffs challenge the trial court's analysis of the equal protection claim through a selective enforcement analysis rather than through an intermediate scrutiny analysis. The ZBA and the BOC contend that the plaintiffs "are not challenging any classification inherent in the ordinance itself (none exists), but rather are still advancing a selective enforcement argument." We agree with their characterization of the plaintiffs' argument.

"[A]n equal protection challenge to an ordinance is an assertion that the government impermissibly established classifications and, therefore, treated similarly situated individuals in a different manner." Taylor v. Town of Plaistow, 152 N.H. 142, 146 (2005) (quotation omitted). "In considering an equal protection challenge under our State Constitution, we must first determine the correct standard of review by examining the purpose and scope of the State-created classification and the individual rights affected." Cmty. Res. for Justice v. City of Manchester, 154 N.H. 748, 758 (2007) (quotation and brackets omitted). "As the right to use and enjoy property is an important substantive right, we use our intermediate scrutiny test to review equal protection challenges to zoning ordinances that infringe upon this right." Id. We have previously held that "intermediate scrutiny under the State Constitution requires that the challenged legislation be substantially related to an important governmental objective." Id. at 762.

Based on the record on appeal, we conclude that the trial court did not err by engaging in a selective enforcement analysis rather than by applying intermediate scrutiny. The plaintiffs emphasize that the "KLP had purposely

6

elected to enforce the Guest Provision, as it construed it, against non-residents only." They do not argue that there is a State-created classification inherent in the Guest Provision. Rather, in their amended complaint, the plaintiffs stated as part of their equal protection claim that "[h]ere, Kearsarge selectively elected to enforce the Ordinance against those property owners whose primary residence was out of state." (Emphasis added.) The plaintiffs also did not engage in an intermediate scrutiny analysis, and have not done so on appeal. Therefore, the plaintiffs have not shown that the trial court's analysis here is legally erroneous.

D

We next address the plaintiffs' argument that the trial court's "concept of standing was too narrow" when it denied their "ultra vires" claim for lack of standing. According to the trial court's order, the plaintiffs argued that the KLP lacked the statutory authority to "enact and enforce the Guest Provision" because "the BOC and ZBA, in applying the Guest Provision in the instant case, adopted an interpretation that would not allow any rentals in the KLP unless they were owner occupied." The trial court noted that the plaintiffs specifically argued that this application restricts affordable housing within the KLP and therefore "conflicts with the holding in Britton v. [Town of] Chester, 134 N.H. 434 (1991), in which the New Hampshire Supreme Court determined that municipal zoning regulations that severely restrict affordable housing conflict with the zoning statute's public welfare requirements and are thus ultra vires." The trial court concluded that the plaintiffs lacked standing because they "do not argue that the holding in Britton prevents municipalities from prohibiting short-term rentals" and "are trying to invalidate a statute on the grounds it unlawfully interferes with a use they do not, and do not intend to, engage in."

On appeal, the plaintiffs now assert that "[t]hey claimed that the Guest Provision, as construed and applied by [the] KLP, was ultra vires as it banned a beneficial use of property within the KLP, namely, the rental of property, whether it was short-term or long-term." They argue that the fact "that the Guest Provision may prevent other rentals as well (i.e., the affected class is larger than those intending short term rentals) does not alter the fact that the Guest Provision, as construed by the KLP, prohibits [the plaintiffs'] use of their properties and directly impacts them."

"Standing under the New Hampshire Constitution requires parties to have personal legal or equitable rights that are adverse to one another, with regard to an actual, not hypothetical, dispute, which is capable of judicial redress." Avery v. Comm'r, N.H. Dep't of Corr., 173 N.H. 726, 737 (2020). "In evaluating whether a party has standing to sue, we focus on whether the party suffered a legal injury against which the law was designed to protect." Id. "Neither an abstract interest in ensuring that the State Constitution is

7

observed, nor an injury indistinguishable from a generalized wrong allegedly suffered by the public at large, is sufficient to constitute a personal, concrete interest." Id. "Because the relevant facts are not in dispute, we review the trial court's determination on standing de novo." Id.

Specifically, "[t]o have standing to take a direct statutory appeal from a zoning action of a legislative body, the appealing party must have been 'aggrieved' by that action." Caspersen v. Town of Lyme, 139 N.H. 637, 640 (1995); see RSA 677:4. "Aggrievement is found when the appellant shows a direct definite interest in the outcome of the proceedings." Caspersen, 139 N.H. at 640. "The existence of this interest, and the resultant standing to appeal, is a factual determination in each case." Id.

Here, the plaintiffs were found by the BOC and the ZBA to have violated the same ordinance that they seek to challenge as ultra vires. This is not a case where "the petitioner had only a generalized interest in the outcome of the ZBA proceedings" or a speculative injury. See Hannaford Bros. Co. v. Town of Bedford, 164 N.H. 764, 769 (2013). There is no dispute that the plaintiffs purchased their properties with renting in mind, subsequently did rent out their properties, and intended to continue to do so. There is also no dispute that the BOC sent the plaintiffs notices of violations for both of their properties that specifically invoked the Guest Provision. Therefore, the plaintiffs have a direct definite interest in the outcome of these proceedings and are "person[s] aggrieved" under RSA 677:4. See Caspersen, 139 N.H. at 640.

We are unpersuaded by the argument advanced by the ZBA and the BOC that "A) the plaintiffs do not use their property for long-term rentals, B) the KLP has never taken the position that the Guest Provision prohibits all rentals, and C) plaintiffs have never presented any evidence of threatened enforcement of the same." In their motion for reconsideration to the trial court and on appeal, the plaintiffs explained that their claim does not focus on long-term rentals exclusively, but on banning rentals as a use generally, including short-term rentals. As the plaintiffs have standing to challenge the Guest Provision as it pertains to short-term rentals, they are not barred completely from asserting an ultra vires claim solely because the Guest Provision may or may not affect long-term rentals as well. Moreover, the plaintiffs do not challenge a "hypothetical application" of the Guest Provision, as the ZBA and the BOC claim. Rather, the plaintiffs' ability to rent out their own properties has already been restricted through the BOC's enforcement of this provision.

Accordingly, we conclude that the trial court erred in determining that the plaintiffs do not have standing and in failing to reach the merits of their ultra vires claim. We reverse on this issue and remand to the trial court for further proceedings.

Regarding their claims of estoppel, waiver, selective enforcement, and administrative gloss, the plaintiffs argue that the "[t]rial [c]ourt's determination that there was no evidence of a de facto policy of non-enforcement was unlawful and unreasonable." The plaintiffs assert that "[w]hile admittedly there is no direct evidence of KLP[s'] [de facto] policy [of nonenforcement], the record is replete with circumstantial evidence supporting such a policy and the law supports the same."

We first turn to the plaintiffs' estoppel and waiver claims. Estoppel requires, inter alia, "a false representation or concealment of material facts made with knowledge of those facts," upon which the other party relies to his or her injury. See Town of Seabrook v. Vachon Management, 144 N.H. 660, 666 (2000). A finding of waiver "must be based upon an intention expressed in explicit language to forego a right, or upon conduct under the circumstances justifying an inference of a relinquishment of it." Town of Atkinson v. Malborn Realty Trust, 164 N.H. 62, 66 (2012) (quotation omitted). The plaintiffs do not argue on appeal, and the record does not support, that the KLP affirmatively interpreted the ordinance as allowing short-term rentals and that the plaintiffs were then induced to rely upon that representation, see Town of Seabrook, 144 N.H. at 666, nor that the KLP waived its right to enforce the Guest Provision, see Town of Atkinson, 164 N.H. at 66. The plaintiffs do not explain how a de facto policy of nonenforcement supports these claims.

Next, we turn to the plaintiffs' selective enforcement claim. Although we have previously noted that "it is conceivable that a pattern of nonenforcement would be so systematic as to constitute ratification of a policy of nonenforcement," Alexander v. Town of Hampstead, 129 N.H. 278, 283 (1987), we have declined to extend this dicta, see Hansel v. City of Keene, 138 N.H. 99, 103 (1993). Rather, to show that the town's enforcement was discriminatory, a plaintiff "must show more than that it was merely historically lax." Alexander, 129 N.H. at 283. "Instead, the plaintiff must show that the selective enforcement of the ordinance against him was a conscious intentional discrimination." Id. (quotation omitted). "[A] municipality's failure to enforce an ordinance does not constitute ratification of a policy of nonenforcement and, consequently, we will not estop a municipality's subsequent enforcement of the ordinance." Id. (quotation omitted). Here, the record supports the trial court's determination that the plaintiffs did not meet the standard for demonstrating selective enforcement.

Finally, we address the plaintiffs' administrative gloss claim. The doctrine of administrative gloss is a rule of statutory construction. Nash Family Inv. Prop. v. Town of Hudson, 139 N.H. 595, 602 (1995). An administrative gloss is placed on an ambiguous clause of a zoning ordinance when those responsible for its implementation interpret the clause in a

consistent manner and apply it to similarly situated applicants over a period of years without legislative interference. Id. If an administrative gloss is indeed found to have been placed on a clause, the municipality may not change such a de facto policy, in the absence of legislative action, because to do so would presumably violate legislative intent. Id. The trial court "assume[d] without deciding that the Guest Provision is ambiguous" and rejected the plaintiffs' administrative gloss argument, reasoning that the record does not show "any prior instance in which the BOC, the ZBA, or any other entity of the KLP ever enforced or considered enforcing the Guest Provision against similarly situated individuals — i.e. individuals using their properties for short-term rentals — and decided against doing so because it interpreted the Guest Provision as inapplicable to that use." Because the record does not show that the ZBA "interpret[ed] the clause in a consistent manner and appl[ied] it to similarly situated applicants over a period of years without legislative interference," we affirm the trial court's denial of this claim. See id. (emphases added).

F

Finally, the plaintiffs argue that the trial court erred in its analysis of their takings claim. The New Hampshire Constitution provides that "no part of a man's property shall be taken from him . . . without his own consent." N.H. CONST. pt. I, art. 12. "A governmental regulation can be a taking, even if the land is not physically taken, if it is an arbitrary or unreasonable restriction which substantially deprives the owner of the economically viable use of his land." Huard v. Town of Pelham, 159 N.H. 567, 574 (2009).

On appeal, the plaintiffs argue that "the trial court erred in holding that a taking claim entitles one to a damages claim only and is not the basis to invalidate a zoning decision." (Capitalization omitted.) The plaintiffs assert that they "effectively sought the same sort of declaration and finding that the plaintiff obtained in Robbins Auto with respect to the Guest Provision and its purported ban on rentals," and that therefore the ordinance can be invalidated through a takings claim. See Robbins Auto Parts, Inc. v. City of Laconia, 117 N.H. 235, 236-37 (1977).

The ZBA and the BOC contend that the takings clause does not apply because the plaintiffs "have not cited any authority for the proposition that if a restriction results in a taking, it can be [the] basis for invalidating an ordinance or the application of the same." We agree.

The plaintiffs' circumstances here are distinguishable from those of Robbins Auto, where the city required "all persons seeking site plan approval on certain streets . . . to give a ten-foot easement to facilitate widening of those streets in the future as required by traffic conditions." Id. at 236. We reasoned that this condition is "not a mere requirement that plaintiff not build on the strip, but is rather a requirement which gives to the city the right to use the

10

land for a public purpose." Id. We concluded that "[i]t is clear that if the city were to take this easement by eminent domain, the plaintiff would have a constitutional right to be compensated for it" and, in this way, the city "is seeking to do indirectly what it cannot do directly." Id. at 236-37. Accordingly, we conclude that the trial court did not err in its takings analysis.

G

Accordingly, we reverse the trial court's decision that the plaintiffs do not have standing to challenge the Guest Provision as ultra vires. For the reasons set forth above, we affirm the trial court's decision with respect to the plaintiffs' other arguments on appeal. We remand the case for further proceedings consistent with this order.

<u>Affirmed in part; reversed in part; and remanded</u>.

MACDONALD, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred; HANTZ MARCONI, J., concurred in part and dissented in part.

**Timothy A. Gudas,
Clerk**

HANTZ MARCONI, J., concurring in part and dissenting in part. I agree with the majority that the doctrine of administrative gloss is a rule of statutory construction that guides the interpretation of an ambiguous zoning provision. However, I disagree that to be applicable the doctrine requires an active decision not to enforce the zoning ordinance against a similarly situated property. In <u>Tessier, Executor v. Town of Hudson</u>, we found that the building official's practice of issuing permits to build on substandard lots (<u>i.e.</u>, not enforcing the lot size regulation) informed the interpretation of the town's "grandfather clause" and prevented a change in that policy absent amendment to the zoning ordinance. <u>Tessier, Ex'r v. Town of Hudson</u>, 135 N.H. 168, 170-71 (1991). Here, the circumstances of this case — the longstanding practice of homeowners in the precinct renting out single-family residences without the owner present, the testimony of a local realtor who, for decades, observed such vacation rentals, a discussion reflected in the minutes of a September 2017 meeting of the board of commissioners acknowledging that "rentals ha[d] not been enforced in the past," and ZBA meeting minutes from April 2016 noting that the ordinance "does not specifically address" "Vacation Rental By Owner" and that "in the event that guest tenants are disturbing the peace, it is best to call the police" — guide me to the conclusion that rentals of single-family residences for any length of time were not intended to be prevented by the

11

Guest Provision in the ordinance. In order to provide fair notice to persons purchasing property in a municipality, a newly regulated use should be the result of a zoning amendment effected by the voters, and not by a change in enforcement policy. See Win-Tasch Corp. v. Town of Merrimack, 120 N.H. 6, 10 (1980) ("If the 'administrative gloss' placed upon the clause over a period of years is to be changed, the voters of [the town], not the zoning board, must change it.").

Accordingly, while I join the majority on all other issues, I would reverse the trial court's decision on administrative gloss. As noted above, the doctrine of administrative gloss is a rule of statutory construction that guides the interpretation of an ambiguous zoning provision. The trial court in this case assumed without deciding that the Guest Provision is ambiguous. Under these circumstances, I would order that on remand, the trial court shall determine whether the Guest Provision is ambiguous. If it is, then the Guest Provision should be construed, pursuant to the doctrine of administrative gloss, as I have explained above.